**UNITED STATES for Use of CARROLL et al. v. BECK et al.**

No. 10032.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1945.

Jay G. Stephenson, of Nashville, Tenn. (Thomas G. Watkins, of Nashville, Tenn., and A. E. Weinstein, of Memphis, Tenn., on the brief), for appellants.

Lindsey M. Davis, of Nashville, Tenn. (William Hume and Laurence B. Howard, both of Nashville, Tenn., on the brief), for appellees.

Before HICKS and SIMONS, Circuit Judges, and FORD, District Judge.

SIMONS, Circuit Judge.

The appeal presents a question relating to the effect of the application of payments by a subcontractor to one who not only supplied him with materials, but loaned him money for payrolls, the funds for payment being received from the general contractor engaged in construction work for the United States. The facts are not in dispute, and follow.

Appellee Beck, doing business as the General Contracting Company, contracted with the United States to build the Andrew Jackson Housing Project at Nashville, Tennessee, pursuant to § 3 of the Act of August 24, 1935, 49 Stat. 793, 40 U.S. C.A. § 270c. He furnished a bond guaranteeing payment of labor and materials.

Beck sublet the painting job to Henry, to be done under the terms of the general contract. Henry, in turn, contracted with Carroll for supplying him with paints and sundries needed in the performance of his subcontract. In addition, Carroll loaned Henry money for payrolls on the work. Eight estimate checks issued by Beck payable to the order of Henry, were endorsed by Henry, delivered to and cashed by Carroll, under an agreement between them that the checks would be credited on the loans made by Carroll. Beck was not a party to this agreement, had no knowledge of it and gave no direction for the application of the payments.

Later, Carroll advised Beck that all estimate checks theretofore received had been applied on his loans to Henry, made for the purpose of meeting payrolls, and insisted that the last, or ninth estimate check, be similarly applied. Beck declined, but consented to an agreement whereby one-half of such check would be credited to the material account and one-half to the loan account, without prejudice to the rights of either party in respect to the application of the proceeds of the first eight estimate checks. The court ruled that the application of these checks by Carroll to his loan account with Henry was prejudicial to Beck and his surety, and that both were entitled to have such payments reapplied upon Carroll's bill for material, and so applied the bill was extinguished. It also concluded that the money loaned by Carroll to Henry was not covered by the bond, that Carroll was a mere volunteer lender to Henry, and that even though the borrowed money was used for Henry's payrolls, and Beck knew it, Carroll was not within the protection of the bond for the amount of the loans.

The original complaint was filed by the United States for the use of Carroll against Beck, and his surety on the statutory bond, for a balance claimed to be due from Henry to Carroll for paints and sundries furnished on the project, and for an additional balance for money loaned to meet payrolls. Later, an action was brought by Henry in the name of the United States, against Beck and his surety, to recover a balance alleged to be due Henry under his subcontract, and for extras. The two cases were consolidated, referred to a Master, and the findings of the Special Master were adopted by the court. The decree provided that the payments by Hen-

ry to Carroll were all to be applied and credited to Carroll's material account, and that the relief sought by the United States for the use and benefit of Carroll be denied, but that the government, for the use and benefit of Henry, be awarded the sum of $3,183.52, with interest, for extra work upon the contract but to be paid to Carroll by Beck and his surety by reason of an assignment made by Henry to Carroll. From this decree an appeal is lodged by the government, for the use and benefit of both real plaintiffs, Henry presumably claiming, though this phase is not now pressed, that the judgment in his favor was inadequate, and Carroll claiming that his material bill should be allowed by a reapplication of the credits to his loan account.

At the argument some question arose between court and counsel as to whether determination of the controversy should be controlled by Tennessee law in respect to application of payments as between debtor and creditor, or whether, in view of the fact that the suit was upon a statutory bond, the decisions of the United States Courts should govern. Both parties, insisting that "the rights and liabilities of the parties to a bond given to the United States under the Federal Statute, 40 U.S.C.A. § 270a, rest upon the federal law and not the state law," and one court at least, having so decided, even though not too confidently, R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 154, 130 A.L. R. 192, we confine our consideration principally to the decisions and rationalizations of the adjudicated federal cases.

It is no doubt the general rule that where a debtor owes more than one matured contractual duty to the same person, and these duties will have performance of identical character, the debtor may have his payments applied to any one of his matured obligations as he sees fit. Restatement, Contracts, § 387. But there is a limitation upon the debtor's power to control application, and if he is under a duty to a third person to devote the money to the discharge of a particular debt, and the creditor knows or has reason to know of such duty, then the payment must be so applied. Restatement, Contracts, § 388. But it is said that in order to bring a contractual duty within the rule of the above section, it is essential that the debtor shall be under a contract with the third person, not merely to pay a particular debt but devote to that debt the very money with which

payment was made. Comment (a) § 388. The federal cases, however, generally deny the debtor's power to control application, insofar as the interests of others are affected, when the creditor knows where the money comes from. This is sometimes grounded upon abstract considerations of equity and justice, and sometimes upon an implied contractual obligation to the surety and his principal, in cases bearing similarity to this. R. P. Farnsworth & Co. v. Electrical Supply Co., supra; Town of River Junction v. Maryland Casualty Co., 5 Cir., 110 F.2d 278, 281, 134 A.L.R. 727; Columbia Digger Co. v. Sparks, 9 Cir., 227 F. 780; United States v. Johnson, Smathers & Rollins, 4 Cir., 67 F.2d 121, 122. As rationalized in R. P. Farnsworth & Co. v. Electrical Supply Co., supra [112 F.2d 153], to allow a creditor to collect an old debt out of the monies paid upon a contract, and to leave the charges for material furnished, outstanding, is "to the prejudice of the principal and the surety on the bond, and of other beneficiaries of the bond, and if sanctioned might cause great injustice." An earlier decision of the same court, Town of River Junction v. Maryland Casualty Co., supra, was based upon an implied obligation of the contractor not to divert money from the job. Such an obligation was enforced by a reapplication of payments in the Columbia Digger Co. and Johnson, Smathers & Rollins cases, supra. Delaware Dredging Co. v. Tucker Stevedoring Co., 3 Cir., 25 F.2d 44, is apparently to the contrary, but as pointed out in the Farnsworth case, no question was there raised as to whether or not the source of the money was known to the recipient.

It is contended, however, that in the cited cases the assailed applications were made on pre-existing debts which did not have their source in the work from which the funds used for payment were derived, while here not only the materials furnished by Carroll, but the money loaned by him, were both used in the performance of Henry's contract with Beck, and there was but one matured obligation, namely, Henry's money debt to Carroll. We fail to see how these circumstances provide a logical basis for differentiating in the application of the principle determinative of the adjudicated cases. The logic that assigns priority to an older debt when no considerations of justice or implied obligation forbid, would seem to make the doc-

trine there applied even more persuasive in cases involving concurrent obligations. In any event, it is the debtor here who has made the segregation of the two debts by his agreement to apply his payments to the one and not to the other, and it is fair inference that if the time element is important, the loans in substantial part, preceded the furnishing of materials.

We think it entirely immaterial that the money borrowed by Henry was devoted to the payment of labor on the job, for even if Carroll had paid for labor directly instead of loaning money to Henry for that purpose, he would have been in no better position with respect to the funds provided by Beck in satisfaction of Henry's claim for work under the subcontract, for the rule is clear that one who loans money to a contractor, even if it be for the payment of laborers and material men, is a mere volunteer, is not subrogated to the rights of laborers or material men, and acquires no lien thereby. Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34, 37; Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S. Ct. 142, 41 L.Ed. 412.

It is urged that the cases recognizing an exception to the general rule, all hold that the party who receives the money and applies the same to the prejudice of the surety, must have known the source of the money. Here it is said, the facts clearly establish that Carroll knew that the money paid by Henry came from Beck but do not show that any part of it came from the United States. If it came from independent funds of the general contractor and not from payments arising out of the contract, the surety had no interest in it to be protected. It is fair inference, however, that the money used by Beck to pay Henry came from the United States, and that such inference was drawn by the court is implicit in the findings and conclusions of the Master adopted by the court. The contract between Beck and the United States is not in the record, but it is recited in the complaint filed on behalf of Henry that final settlement under the contract was made as shown by the certificate of the Assistant Comptroller General of the United States, and it must be assumed, therefore, that other settlements had been made from time to time by similar certificates.

Finally, it is contended that even though there may be question about the liability of the surety for the material bill because repayment of the loan was not within the coverage of the bond, there can be no question about the liability of Beck. Henry, however, was a subcontractor, and his subcontract was subject to the terms of Beck's contract with the government. By that contract Beck undertook promptly to pay all claims for labor and materials and to protect the government from liens. Henry knew the extent of Beck's obligation to the United States, and contracted with Beck in subordination to it. Carroll must likewise be charged with knowledge of the obligations of both. Henry's contract on a government project was the basis for the credit extended to him by Carroll. If equitable considerations or the doctrine of an implied obligation arising out of these circumstances relieves the surety from the obligation to Carroll on its bond, it must likewise relieve Beck from obligation to Carroll for money loaned to Henry. Any other conclusion would require that Beck, having paid Henry for work and materials, must again pay Carroll for materials furnished in order to fully perform his agreement with the government. Neither justice nor reason requires such result, and the adjudicated federal cases are persuasive precedents against it.

Judgment affirmed.