**CONSOLIDATED ELECTRIC CO., et al., Appellants,**

v.

**UNITED STATES of America for Use and Benefit of GOUGH INDUSTRIES, INC., Appellee.**

**No. 19553.**

United States Court of Appeals
Ninth Circuit.

Jan. 18, 1966.

Robert M. Peterson, of Newton & Irvin, Los Angeles, Cal., for appellants.

Ralph W. Hoffman, of Behymer, Hoffman & Hunt, Los Angeles, Cal., for appellees.

Before JERTBERG and ELY, Circuit Judges, and POWELL, District Judge.

ELY, Circuit Judge.

In this Miller Act (40 U.S.C. §§ 270a–270d (1964)) case, the prime contractor and his surety appeal from a summary judgment granted by the District Court against them and a subcontractor and in favor of one who supplied material to the subcontractor. The subcontractor, Consolidated Electric Company, did not appeal.

Jacob J. Peretz, doing business as Peretz Construction Co., entered into a contract with the United States. Under the terms of this prime contract, Peretz agreed to furnish the necessary labor and materials to pursue and complete construction on what is known as the Animal Laboratory at the Veterans' Administration Center, Los Angeles, California. In accordance with the requirements of the contract and with the provisions of the Miller Act, Peretz and Standard Accident Insurance Company, as surety, executed and delivered to the Veterans' Administration a bond in the amount of $203,300.00. The condition of the bond was that Peretz promptly pay all who supplied him with labor or materials in the prosecution of the work contemplated by the contract and any authorized extension or modification thereof.

Peretz contracted with Consolidated Electric Company for the latter to furnish labor and material for all of the electrical work necessary to complete the project. Consolidated then entered into an oral agreement under which Gough Industries, Inc., was to furnish certain electrical materials, and it was agreed that the total price for such items should be $40,039.99. Gough alleged that it furnished the materials, that only $36.22 was paid on the account, that $601.10 in credit memos had been issued by Gough, and that there remained an unpaid balance of $39,402.67. Consolidated is in the hands of an assignee for the benefit of creditors, and the United States, for the use and benefit of Gough, brought suit against Consolidated, Peretz and Peretz's surety. The District Court granted a summary judgment for the entire amount of the prayer plus costs.

Summary judgment has been described as a "drastic remedy". 3 Barron & Holtzoff, Federal Practice and Procedure § 1231 (Wright ed.), quoted in Hoffman v. Babbit Bros. Trading Co., 203 F.2d 636, 638 n. 1 (9th Cir. 1953). It should be rendered, upon motion, only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If, viewing the evidence as a whole and the inferences which may be drawn therefrom in the light most favorable to the party opposing the motion, we can see that there is no genuine issue of fact, then the granting of a motion for summary judgment should be sustained. United States ex rel. Austin v. Western Elec. Co., 337 F.2d 568, 575 (9th Cir. 1964); see generally Wright, Federal Courts § 99 (1963). When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment. See Alabama Great So. R. R. v. Louisville & N. R. R., 224 F.2d 1, 5, 50 A.L.R.2d 1302 (5th Cir. 1955). It is important, and ordinarily essential, that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-

examination, of a witness whose subjective motive is at issue.

Appellants here contend that genuine undetermined issues of fact include the following: (1) whether Consolidated had actually paid for all or part of the material furnished by Gough; (2) whether Gough and Consolidated fraudulently applied funds received from Peretz to charges on other jobs, including one described as the "Economy Blueprint Job", and overpaid such accounts so as to avoid crediting the Peretz account job and to collect the money a second time by recovery in the present suit; (3) whether Gough knew or had reason to know that Peretz was the source of all or a portion of the funds paid to it by Consolidated and whether Gough is thereby bound to apply such payments to the Peretz job account.

We now look to the facts as they are shown by affidavits and deposition testimony offered in support of and in opposition to appellee's motion for summary judgment.

During the period of construction Peretz paid Consolidated $69,800.00. During this same period Consolidated paid $39,811.99 to Gough. Gough's books show that only $36.22 of the amount received from Consolidated was credited to the Peretz job, and Consolidated's books do not reflect that any of the amounts were to be applied to the Peretz job.

Consolidated's records of purchases from Gough for the "Economy Blueprint Job" reveal that it had purchased supplies valued at $19,407.86 from Gough for that job. The check record, however, indicates that Consolidated paid Gough $21,699.55, an overpayment of $2,291.69 on the "Economy Blueprint Job", and that the prime contractor for that project paid Gough an additional $7,024.31. Thus, there was an apparent overpayment of $9,316.00 for supplies furnished by Gough to Consolidated for the "Economy Blueprint Job". The credit manager of Gough, one Carnahan, testified in his deposition that, as a general rule, the allocation of cost of labor and material to a job by a contractor such as Con-

solidated would be fifty percent to labor and fifty percent to materials. One Haggard, the president of Consolidated, testified that the allocation usually runs forty percent to labor and sixty percent to materials. Yet on the "Economy Blueprint Job" the total actual billing by Consolidated to the prime contractor was $31,701.46 for both labor and material, and Gough was paid $28,723.80 for materials only, more than ninety and six-tenths percent of the amount Consolidated billed to the prime contractor for both labor and materials. When Haggard was questioned as to whether the "Economy Blueprint Job" ratio of material costs to the total amount billed seemed "a little out of line", he replied, "It does not add up, does it?" Additionally, in an affidavit, appellants' attorney averred that he was able to trace the source of a payment of $7,507.44 by Consolidated to Gough for the "Economy Blueprint Job" to funds received by Consolidated from Peretz.

Carnahan, of Gough, testified that he and Haggard, Consolidated's president, enjoyed a close personal relationship. On several occasions, Carnahan had loaned Haggard money in amounts up to $1,000.00 for various reasons, including Haggard's "running short on the payroll, * * *." One check in the amount of $500.00 was issued by Consolidated to Gough's credit manager and was credited in the check register to "airport office". The credit manager explained that the entry must have been an error, as the check was issued in repayment of a loan.

The financial condition of the subcontractor, the intimate relationship between the president of the subcontractor and the credit manager of the supplier, the rather mysterious bookkeeping entries relative to the "Economy Blueprint Job" and the Peretz job, and the fact that the prime contractor had already paid most of what was due to the subcontractor cannot be viewed as insignificant. They lead to the conclusion that there are facts, already shown, from which the validity of some of appellant's contentions might possibly be inferred.

Under the peculiar circumstances, we believe that the trial court may have derived aid from observation of the demeanor and attitude of witnesses, particularly under cross-examination. As our court has written,

"If the district court were permitted to weigh the evidence and resolve issues in making its findings of fact and conclusions of law, we could properly find from the evidence here that the findings and conclusions should be sustained. It is necessary to determine, however, whether viewing the evidence as a whole and the inferences to be drawn therefrom in the light most favorable to the [party opposing the motion for summary judgment] it may be said that there is no genuine issue of fact,[11] mindful also of the fact

"11. An issue of fact may arise from inferences to be drawn from the evidence, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Cameron v. Vancouver Plywood Corporation, 9 Cir. 1959, 266 F.2d 535, 539."

that there is no express finding to that effect by the district court [as there was no such express finding by the trial court in the instant case." United States ex rel. Austin v. Western Elec. Co., supra, 337 F.2d at 572.

As appellants write in their brief, "The result of overapplication of funds to the 'Economy Blueprint Job' is to avoid applying the funds to defendant Jacob J. Peretz's job and to permit plaintiff to recover the money a second time via the Jacob J. Peretz Miller Act bond. A result which will benefit plaintiff as it will offset the approximately $59,000.00 loss plaintiff will suffer by reason of unsecured sums due it from Consolidated Electric Co. which is in the hands of an assignee for benefit of creditors." Appellee, in its brief, replies, "The plight of the appellant as a prime contractor who furnished a Miller Act Bond and has paid most of what is due to a sub-contractor and is now ordered to pay again, is certainly not to be envied, but on the other hand, * * * [Peretz] failed to take any of the normal precautions to prevent this happening when he admitted that he didn't insist upon joint checks to Consolidated and Gough Industries, and that he never required a material release, and that he did not require Consolidated to be bonded, when he entered into a contract with it. In fact, when he did make the request that Consolidated furnish a bond, he was told that it was not able to furnish a bond and still he proceeded without any of the normal precautions."

■ If Peretz did not take all the precautionary measures suggested by appellee and which suspicion or lack of trust might require, the failure would not necessarily be fatal to his defenses. St. Paul Fire & Marine Ins. Co. v. United States ex rel. Dakota Elec. Supply Co., 309 F.2d 22 (8th Cir. 1962), cert. denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963). And although the reviewed facts may point to fraud, Peretz's right to the proper application of its payments is not dependent upon fraud's existence. See St. Paul Fire & Marine Ins. Co. v. United States ex rel. Dakota Elec. Supply Co., supra; United States ex rel. Carroll v. Beck, 151 F.2d 964, 166 A.L.R. 637 (6th Cir. 1945); R. P. Farnsworth & Co. v. Electrical Supply Co., 112 F.2d 150 (5th Cir.), cert. denied, 311 U.S. 700, 61 S.Ct. 139, 85 L.Ed. 454 (1940); see also Columbia Digger Co. v. Sparks, 227 F. 780 (9th Cir. 1915) (not concerned with the Miller Act).

■ In *St. Paul Fire & Marine Ins. Co.*, supra, the facts were similar to those developed here. The Court of Appeals held that when the relationship between the supplier and the insolvent subcontractor is such that, even if the supplier did not have actual knowledge of the source of the funds it received from the subcontractor, if it "at least had reason to believe, taking into consideration the realities of the situation, that, * * *,

the receipt of funds by [the supplier] was made possible * * * by the progress payments by [the prime contractor]" such is enough to require the supplier to apply the payments to the account of the prime contractor. 309 F.2d at 30. "If the payor is under a duty to a third person to devote money paid by him to the discharge of a particular debt the payment must be so applied if the creditor knows, or has reason to know, of the payor's duty, in spite of the fact that the payor directs that the payment shall be applied to the discharge of another debt." Restatement, Contracts § 388 (1932).

The granting of the motion for summary judgment was erroneous, and the judgment is

Reversed.