**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA, Ex Rel.,
Maddux Supply Company,
<u>Plaintiff-Appellee,</u>

v.

ST. PAUL FIRE & MARINE INSURANCE

COMPANY; HILL CONSTRUCTION
COMPANY, INCORPORATED,
<u>Defendants-Appellants,</u>

No. 95-2446

CHAPMAN ELECTRIC COMPANY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Charles E. Simons, Jr., Senior District Judge.
(CA-92-2445-2-6)

Argued: March 6, 1996

Decided: June 6, 1996

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
YOUNG, Senior United States District Judge for the District of
Maryland, sitting by designation.

_____

Affirmed by published per curiam opinion. Judge Niemeyer wrote a
specially concurring opinion.

_____

**COUNSEL**

**ARGUED:** Michael S. Seekings, Claron A. Robertson, III, ROB-
ERTSON & SEEKINGS, Charleston, South Carolina, for Appellants.

Gregg Meyers, WISE, PRATT-THOMAS, PEARCE, EPTING & WALKER, P.A., Charleston, South Carolina, for Appellee.

_____

**OPINION**

PER CURIAM:

Appellant Hill Construction Corp. was sued under the Miller Act, 40 U.S.C. § 270(b), by a supplier on a construction project performed for the federal government. After a bench trial, the district court awarded damages to the supplier, and the contractor and surety appealed. We now affirm.

I

Appellant Hill Construction Corp. served as general contractor for a construction project ("the project") performed for the United States Air Force, with St. Paul Fire and Marine Insurance Co. as its surety. Appellee Maddux Supply Co. supplied materials to appellee Chapman Electric Co., a subcontractor on the project.

For several years prior to this project, Maddux and Chapman had conducted business under the terms of a credit application submitted by Chapman to Maddux. The credit application contained the following language:

> Customer authorizes Maddux Supply Company to apply all payments on this account at Maddux Supply's discretion unless otherwise directed in writing at time of payment.

The application also contained this language:

> Terms of payment - . . . a 1 1/2% monthly service charge will be added to all accounts not paid within 30 days after due date. In the event it shall become necessary to collect any outstanding amount owed to Maddux Supply Company, the purchaser [Chapman] agrees to pay all costs thereof, including reasonable attorneys' fees.

2

During the course of the project, Chapman fell behind on its payments to Maddux, although it continued to make some payments. The parties dispute whether the payments made were properly attributed to the Hill account or to some other account. In the end, Maddux contends, Chapman was deficient by $30,225.66.

Pursuant to the Miller Act, supra, Maddux brought suit against Hill, Chapman, and St. Paul to collect the deficiency. Hill and St. Paul cross-claimed against Chapman for indemnification. Chapman cross-claimed against Hill for $14,057.55, the amount Hill retained from Chapman but conceded was properly payable. After a court trial, Judge Simons ordered Hill and St. Paul to pay Maddux $30,225.66, plus interest and attorney's fees and awarded Hill and St. Paul indemnification from Chapman for $30,225.66, but not for interest and attorney's fees. Finally, the Court awarded Chapman $14,057.55 that Hill had retained.

Hill and St. Paul appealed, and we now affirm.

II

A

Factual matters are reviewed for clear error. Crawford v. Air Line Pilots Ass'n Int'l, 992 F.2d 1295, 1297 (4th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 195 (1993). Legal questions, including applications of law to facts, are reviewed de novo. Rawl v. United States, 778 F.2d 1009, 1014 (4th Cir. 1985), cert. denied , 479 U.S. 814 (1986). The calculation of damages is a finding of fact and therefore is reviewable only for clear error, but to the extent those calculations were influenced by legal error, review is de novo.

The Miller Act, § 270a, requires a government contractor to post a surety bond for contracts of $25,000 or more. An entity that has furnished labor or material for a project and has not been paid in full within 90 days after performance may bring suit on the payment bond for "sums justly due." The obligation of the surety and contractor includes amounts owed by subcontractors to their suppliers. Miller Equipment Co. v. Colonial Steel and Iron Co., 383 F.2d 669, 674 (4th

3

Cir. 1967), cert. denied, 390 U.S. 955 (1968). The fact that a subcontractor has been paid in full does not eliminate liability to the supplier. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380 (1917). The Miller Act "should receive a liberal construction to effectuate its protective purposes." United States ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957).

Hill and St. Paul's basic contention is that Maddux improperly applied certain payments to reduce Chapman's debt on projects other than the Hill project. The contract between Chapman and Maddux provided that Maddux could apply payments at its discretion unless instructed otherwise. The district court found that from April, 1991, to July, 1992, with one exception, Chapman's payments to Maddux were accompanied by instructions relating to application of the funds. One payment, for $6898.53, contained no instructions. Chapman has stated that its customary practice was to apply the payment to the oldest outstanding invoice when no instructions accompanied a payment.

Ordinarily, a creditor must apply payments as instructed by the debtor. See, e.g., Maddux Supply Co. v. Safhi, Inc., 450 S.E.2d 101, 103 (S.C. App. 1994). Hill and St. Paul have not disputed the Court's finding that Maddux followed Chapman's instructions for every payment with which Chapman included instructions. As for the payment to which no instructions were attached, Hill and St. Paul offered no evidence to indicate that Maddux did not follow its customary practice of applying that payment to the oldest outstanding invoice.

Hill and St. Paul cite case law indicating that when a supplier knows, or has reason to know, the source of a payment, the supplier must apply payments to the debt created by that source. United States ex rel. Carroll v. Beck, 151 F.2d 964 (6th Cir. 1945). Here, although the district court did not directly apply the Beck rule, it concluded that Maddux did not know the source of Chapman's funds and did not have reason to know the source. Hill and St. Paul offer no evidence to the contrary. This case therefore is distinguishable from Beck, in which the subcontractor's payments consisted of checks from the contractor endorsed over to the supplier. Chapman issued its own checks to Maddux, usually with instructions as to how the money should be applied. We find no error in the conclusion that Chapman did not have reason to know the source of the payments.

4

Hill and St. Paul contend that the amount awarded included a balance owed by Chapman before work began on the project, indicating the existence of other debts. Even if Hill and St. Paul were to show a past due balance on another account, they would have to show that Maddux improperly used payments from Hill to reduce that balance, rather than the balance on the Hill account. In any event, the district court concluded that there was no past due indebtedness prior to commencement of the project, and that conclusion is not clearly erroneous.

Hill and St. Paul note that on April 1, 1991, Chapman had a balance of $12,891.69 due to Maddux. They argue that Maddux began work on the project on April 1, 1991, and that any balance due on that date must be attributable to another project.

The district court examined various business records and found that, while Chapman indeed owed $12,891.69 on April 1, 1991, the project began in January, not April. The Court based that conclusion on records indicating that Maddux made its first shipment of materials for the project in January, 1991, and found that in January, Chapman owed Maddux $426.60 and was current in its payments. The Court concluded that there was no past due indebtedness from Chapman to Maddux prior to commencement of work on the project.

Hill and St. Paul have not disputed the validity of the records but offer the testimony of representatives of Chapman and Maddux that Chapman owed Maddux money before Maddux began supplying materials for the project. This testimony arguably is in conflict with the district court's analysis of the business records, although the conflict may be reconcilable. The Chapman and Maddux representatives may have been referring to current amounts due on other accounts; if so, their testimony would not be inconsistent with a finding of no past due indebtedness. The Court's conclusion is buttressed by other testimony indicating that the Chapman account with Maddux was in "good standing."

The district court's factual conclusions, having followed the correct legal standards, are supported by the record and are not clearly erroneous.

B

The Miller Act does not, by its own terms, provide for attorney's fees or interest. Several circuits have held, however, that interest and attorney's fees are recoverable if they are part of the contract between the subcontractor and supplier. See United States ex rel. Southeastern Municipal Supply Co., Inc. v. National Union Fire Insurance Co., 876 F.2d 92, 93 (11th Cir. 1989) (attorney's fees provision); United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc., 554 F.2d 164, 166 (5th Cir. 1977) (attorney's fees); Traveler's Indemnity Company v. United States, 362 F.2d 896, 899 (9th Cir. 1966) (attorney's fees); D & L Construction Co. v. Triangle Elec. Supply Co., 332 F.2d 1009, 1013 (8th Cir. 1964) (interest and attorney's fees). The rationale of those decisions -- that attorney's fees and interest may be "sums justly due" under the Miller Act -- is consistent with this court's rulings that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers. See, e.g., Miller Equipment Co., 383 F.2d at 674. Accordingly, if Maddux was entitled to interest and attorney's fees under its contract with Chapman, it may recover interest and fees from Hill and St. Paul.

Under the credit application submitted by Chapman to Maddux, interest "will be added to all accounts not paid within 30 days after due date." In addition, "the purchaser" (Chapman) must pay attorney's fees "in the event it shall become necessary to collect any outstanding amount owed to Maddux Supply Company." The district court found that the credit application was part of the contract on the Hill project. Because this question is factual in nature, the clearly erroneous standard applies, and Hill and St. Paul have provided no evidence of error in that finding.

Hill and St. Paul contend that, because Chapman signed the credit application before Hill entered into a contractual relationship with either Chapman or Maddux, the provision is not enforceable against them. The case law does not support this distinction. Regardless of the origin of the provision, it was part of the contract between Maddux and Chapman for the Hill project, and Maddux may recover.

The district court awarded interest and attorney's fees to Maddux against Hill and St. Paul but declined to award indemnification from

6

Chapman for those items. The Court based those rulings on Chapman's cooperation in attempting to resolve Maddux's claim and on Hill's retention of $14,057.55 it conceded it owed Chapman. This decision not to hold the subcontractor responsible for interest and fees raises the question of whether a surety and a contractor may be liable for those items. We conclude that the district court was correct in holding Hill and St. Paul liable for interest and fees. The language of the contract suggests that fees and interest are "sums justly due" Maddux. The fact that the Court did not hold Chapman responsible for fees and interest does not indicate the amounts were not "sums justly due." Rather, because Hill and St. Paul alone had contested Maddux's right to recover, the district court concluded that Hill and St. Paul should pay for the consequences of their actions-- namely, the attorney's fees that Maddux incurred in securing its recovery and the interest that accrued while Maddux was awaiting payment. Under the liberal construction of the Miller Act required by United States v. Carter, 353 U.S. at 216, we conclude that the district court did not err in holding Hill and St. Paul liable for interest and attorney's fees.

III

For the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.

NIEMEYER, Circuit Judge, specially concurring:

I concur in the judgment, but write separately because I would affirm the district court's award of $30,225.66 in actual damages to Maddux Supply Company on grounds different than those relied upon by the majority in Part IIA of its opinion.

Maddux Supply was a standing supplier to Chapman Electric Company, providing Chapman Electric materials for several jobs. During the period in question, Chapman Electric had an open account with Maddux Supply. When Chapman Electric made a payment to Maddux Supply on account, Chapman Electric usually instructed Maddux Supply how to apply the payment, and Maddux Supply invariably fol-

7

lowed Chapman Electric's instructions. When Maddux Supply received no instructions, it applied payments to the oldest items in accordance with the parties' standing contractual arrangement.

The record in this case shows that Maddux Supply neither knew nor had reason to know the source of any money with which Chapman Electric made payments on its account, and, therefore, that Maddux Supply had no independent basis to assign payments to any particular job. Although Chapman Electric received money from Hill Construction Company, the general contractor for the Air Force project involved in this case, Chapman Electric never advised Maddux Supply that any of its money came from Hill Construction or directed that its money pay for materials used in the Air Force project. Unless Maddux Supply knew or had notice that Hill Construction was the source of Chapman Electric's payments, Maddux Supply was entitled --indeed, contractually obligated--to apply Chapman Electric's payments in the manner that it did. See United States ex rel. Crane Co. v. Johnson, Smathers & Rollins, 67 F.2d 121, 123 (4th Cir. 1933); see also United States ex rel. Hyland Elec. Supply Co. v. Franchi Bros. Constr. Corp., 378 F.2d 134, 139 (2d Cir. 1967); Consolidated Elec. Co. v. United States ex rel. Gough Indus., Inc., 355 F.2d 437, 439-41 (9th Cir. 1966); St. Paul Fire & Marine Ins. Co. v. United States ex rel. Dakota Elec. Supply Co., 309 F.2d 22, 30 (8th Cir. 1962), cert. denied, 372 U.S. 936 (1963); United States ex rel. Carroll v. Beck, 151 F.2d 964, 966 (6th Cir. 1945); R.P. Farnsworth & Co. v. Electrical Supply Co., 112 F.2d 150, 153 (5th Cir.), cert. denied, 311 U.S. 700 (1940); Maddux Supply Co. v. Safhi, Inc., 450 S.E.2d 101, 103 (S.C. Ct. App. 1994).

In these circumstances, I believe it immaterial that Chapman Electric's account with Maddux Supply had an open balance of $12,892 on April 1, 1991, and that Maddux Supply began supplying materials to Chapman Electric for the Air Force project in January 1991. The facts remain that Maddux Supply properly applied Chapman Electric's payments and that Chapman Electric's account with Maddux Supply in the amount of $30,226 has not been paid. Because the $30,226 was due for materials used on the Air Force project, the Miller Act gives Maddux Supply a claim against Hill Construction and its surety, St. Paul Fire and Marine Insurance Company, for that

8

amount. <u>See Miller Equip. Co. v. Colonial Steel and Iron Co.</u>, 383 F.2d 669, 674 (4th Cir. 1967), <u>cert</u>. <u>denied</u>, 390 U.S. 955 (1968).

Accordingly, I specially concur.

9