**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE UNITED STATES OF AMERICA FOR
THE USE OF MAVIS MECHANICAL
SERVICES, INCORPORATED,
Plaintiff-Appellant,

v.

THE HANOVER INSURANCE COMPANY,
Defendant-Appellee.

No. 98-1946

and

SIEGURD W. MONROE, trading as S.
W. Monroe Construction Company;
S. W. MONROE CONSTRUCTION
COMPANY,
Defendants,

LINDA J. MONROE,
Third Party Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-97-1469-MJG)

Argued: March 2, 1999

Decided: July 6, 1999

Before ERVIN, Circuit Judge, VOORHEES, United States District
Judge for the Western District of North Carolina, sitting by
designation, and FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John B. Stolarz, Baltimore, Maryland, for Appellant. Francis Joseph Nealon, BALLARD, SPAHR, ANDREWS & INGER-SOLL, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Eric C. Lund, BALLARD, SPAHR, ANDREWS & INGERSOLL, L.L.P., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Mavis Mechanical Services, Inc. ("Mavis"), a subcontractor on a federal construction project, brought a Miller Act claim for payment against appellee Hanover Insurance Company ("Hanover"), the issuer of a performance bond for the project. See 40 U.S.C.A. § 270a-d (West 1986 & Supp. 1999). The Miller Act mandates that general contractors awarded federal construction projects execute performance bonds for the protection of their subcontractors. See § 270a(a). Claims against these bonds are subject to a strict statute of limitations: the Miller Act requires that a claim must be filed within one year of the date that a subcontractor last supplied labor or material to the project. See § 270b(b). Following a bench trial, the district court ruled that Mavis' claim was time-barred under the statute; after considering the parties' briefs and oral arguments, we affirm.

I.

In 1992 the federal government contracted with Siegurd W. Monroe, doing business as S. W. Monroe Construction Company

2

("Monroe"), to replace sprinkler, fire loop, and storm lines at the Washington National Records Center ("Records Center") in Suitland, Maryland. The General Services Administration ("GSA") administered the contract on behalf of the government. Pursuant to the requirements of the Miller Act, which covers contracts for the construction or alteration of federal public buildings, Monroe obtained a payment bond for the protection of his subcontractors. See 40 U.S.C.A. § 270a(a). Monroe subsequently entered into a subcontract with Mavis for the performance of mechanical work at the Records Center.

The Records Center project was plagued by numerous delays occasioned when Monroe failed to submit paperwork promptly and fell short of construction timetables. Monroe also failed to pay its subcontractors on a timely basis. Dissatisfied with the general contractor's performance, in December of 1996 the GSA terminated its contract with Monroe.

As of November 1995, Mavis had performed substantially all of its obligations under the subcontract with Monroe. The single task remaining was for Mavis to install a "siamese" valve in the water line to permit the fire department water access in the event of an emergency.

Mavis did not complete this final task. Months later, in March of 1996, Mavis wrote to Monroe complaining of overdue payments and demanding that Monroe pay all outstanding invoices if the contractor wished for Mavis to install the siamese valve. Monroe did not respond. On March 12, 1996, Mavis wrote to Hanover, asserting a claim for payment of past due invoices and advising the insurer of Mavis' intent to file suit under the Miller Act to recover against the performance bond.

Hanover replied with a May 14, 1996, letter requesting that Mavis document the timeliness of its Miller Act claim by supplying the insurer with records indicating when labor or materials were last supplied to the project. Mavis did not do so; nor did the subcontractor file its threatened lawsuit. Not until March of 1997 did Mavis reply to Hanover by once again requesting payment of Monroe's past due

3

accounts. Attached to this letter was a single requisition for the amount of $20,904.

Hanover responded to this second letter by again requesting that Mavis document the last day that it supplied labor or materials to the Records Center project. Mavis did not produce the requested documentation; instead, on May 1, 1997, the subcontractor filed suit against Hanover and Monroe, alleging a right to payment under the Miller Act.

To establish the jurisdictional basis for a Miller Act claim, Mavis alleged in its complaint that one year had not expired since the date it last supplied labor to the Record Center project. At trial Mavis argued that it performed labor within the statutory period on two separate occasions in 1996: first, when the subcontractor attended a GSA project planning meeting on October 21st; and second, when John Mavis, the company's vice president, visited the jobsite on November 4th with another Mavis employee and made a brief, unsuccessful attempt to install the siamese valve.

At the close of the evidence, the district court entered a default judgment against Monroe because the contractor had failed to appear and defend the lawsuit. The court awarded Mavis the amount of all its unpaid invoices, with the exception of the $125 that Mavis billed for its alleged site visit of November 4th, 1995. The district court also entered judgment for Hanover, holding that Mavis' claim against the insurer's payment bond was time-barred under the Miller Act.[1] Mavis appeals this latter ruling.

II.

We review the district court's conclusions of law de novo. See United States v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 334 (4th Cir. 1996). We will reverse the court's factual findings only upon

_____

[1] Prior to trial the district court denied Mavis' motion for leave to amend its claim to allege additional "delay" damages. Because we affirm the ruling on liability, we need not reach Mavis' claim, argued on appeal, that the Miller Act permits a subcontractor to recover damages other than those strictly attributable to the costs of labor and materials.

4

evidence of clear error. See id. A finding of fact is clearly erroneous if the reviewing court "on the entire evidence is left with a definite and firm conviction that a mistake has been committed." See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

The Miller Act grants any person who has "furnished labor or materials in the prosecution of the work provided for [in a federal construction contract]", 40 U.S.C.A. § 270b(a), the right to sue the issuer of the payment bond, provided that "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material supplied by[the subcontractor]," 40 U.S.C.A. § 270b(b).

The district court concluded that Mavis' attendance at the October 21st meeting did not constitute labor for the purpose of computing the Miller Act's statute of limitations. As an initial matter, the court noted that the subcontract did not require Mavis to attend this type of "project coordination" meeting. Equally significant in the court's view was the fact that by the date of the meeting, Mavis had essentially completed its work on the Records Center project, and thus had no efforts left to coordinate with other subcontractors.[2]

Finding no legal or factual errors, we will not disturb the district court's ruling that for Mavis, the October 21st meeting was merely an overhead expense insufficient to constitute labor within the meaning of the Miller Act. See General Ins. Co. of Am. v. The United States of America for the Use of Audley Moore & Son, 409 F.2d 1326, 1327 (5th Cir. 1969) ("Labor furnished in the prosecution of the work is not co-terminus with the outer limits of all duties provided by the contract.").

With respect to Mavis' November 4th, 1996, attempt to install the siamese valve, the district court found that the subcontractor failed to prove by a preponderance of the evidence that it had actually furnished labor on this occasion. The court weighed Mr. Mavis' uncorroborated account of the site visit against the following facts: (1)

---

[2] The court found that Mavis' one remaining contractual obligation, the installation of the siamese valve, involved only a trivial amount of labor and constituted less than 0.5% of the value of the contract.

5

Mavis had previously refused in writing to install the valve without payment of past due accounts; (2) Mavis submitted no contemporaneous records or bills for the attempted installation; (3) Mavis purportedly failed to install the valve because Mr. Mavis, an experienced contractor, neglected to bring the correct tools for the job; and (4) Mavis never returned to the site to complete what he admitted was a very simple task.

After our review of the record, we cannot say that the district court clearly erred in concluding that Mavis did not attempt to install the siamese valve. Because we affirm this factual finding, we need not consider whether, as a matter of law, Mavis' brief attempt to install the valve would establish the jurisdictional basis for a Miller Act claim, although we express doubt that this is so.

III.

For the aforementioned reasons, the judgment of the district court is affirmed.

AFFIRMED