Michigan Supreme Court
Lansing, Michigan

# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

WYANDOTTE ELECTRIC SUPPLY COMPANY v
ELECTRICAL TECHNOLOGY SYSTEMS, INC

Docket No. 149989. Argued November 5, 2015 (Calendar No. 3). Decided May 3, 2016.

Wyandotte Electric Supply Company (Wyandotte) brought an action in the Wayne Circuit Court against Electrical Technology Systems, Inc. (ETS), KEO & Associates, Inc. (KEO), and Westfield Insurance Company (Westfield). KEO was the principal contractor for a renovation project at the Detroit Public Library. Westfield provided a surety bond for the project in accordance with the public works bond act (PWBA), MCL 129.201 *et seq*. KEO subcontracted with ETS to provide labor and materials for the project, and ETS, in turn, subcontracted with Wyandotte for materials. Over the course of the library project, ETS only paid Wyandotte sporadically. Wyandotte filed a claim with Westfield, seeking to recover on the payment bond. Westfield denied the claim, and Wyandotte subsequently brought this action. ETS defaulted, and Wyandotte moved for summary disposition against KEO and Westfield. The court, Robert J. Colombo, Jr., granted Wyandotte's motion in part, concluding that there was a valid bond claim, given that Wyandotte had complied with the notice requirements of the PWBA, and that Wyandotte could recover a time-price differential as well as attorney fees. A bench trial was then held on the question of damages. The court found that the unpaid balance owed to Wyandotte was $154,343.29, that Wyandotte was entitled to a total time-price differential of $76,403.44, and that Wyandotte was entitled to $30,000 in attorney fees. Wyandotte moved for entry of judgment and further requested postjudgment interest under MCL 600.6013(7). The court granted the motion over the objections of KEO and Westfield and entered a judgment in the total amount of $272,927.70. KEO and Westfield appealed. The Court of Appeals, BECKERING, P.J., and HOEKSTRA and GLEICHER, JJ., affirmed the judgment of the trial court in an unpublished opinion per curiam. KEO and Westfield then sought leave to appeal. The Supreme Court granted leave. 497 Mich 958 (2015).

In an opinion by Justice BERNSTEIN, joined by Justices MARKMAN, MCCORMACK, VIVIANO, and LARSEN, the Supreme Court *held*:

1. Under MCL 129.207 of the PWBA, a claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) the claimant has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials being furnished or to be furnished, or labor

being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) the claimant has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Each notice shall be served by mailing the same by certified mail, postage prepaid. In this case, KEO asserted that Wyandotte failed to properly serve KEO because KEO never received the 30-day notice. The plain language of the statute, however, does not require actual receipt of the notice. Wyandotte sent the 30-day notice through certified mail as required by the statute. When a claimant has complied with the notice procedures set forth by the Legislature in MCL 129.207, there is no actual-notice requirement.

2. MCL 129.207 of the PWBA permits an unpaid supplier of materials or labor to sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due the claimant and have execution thereon. Wyandotte sought payment based on its prior contracts with ETS: an open-account agreement entered into in 2003, the bid Wyandotte made for the Detroit Public Library project in 2009, and the ensuing purchase orders. Wyandotte argued that it was entitled to the unpaid balance for the materials it had provided as well as further damages under time-price-differential and past-due-accounts provisions in the open-account agreement. Contractual privity is not a requirement for recovery under MCL 129.207, so the fact that KEO and Westfield did not agree to those provisions was immaterial. The dispositive question was whether amounts due under the time-price-differential and past-due-accounts provisions were part of the sum justly due to Wyandotte under the statute. The sum justly due under MCL 129.207 is the amount provided for in the claimant's contract. At the time Wyandotte commenced this action, ETS had already fallen behind on its payments to Wyandotte for the materials Wyandotte had provided in connection with the library project. The time-price differential referred to in the contracts between Wyandotte and ETS was in play, reflecting the increased cost to Wyandotte as ETS's bills went underpaid or unpaid. Therefore, a time-price differential was part of the amount unpaid and due to Wyandotte when it instituted the instant action, and the trial court properly included the time-price differential as part of the judgment in Wyandotte's favor. The past-due-accounts provision stated that if ETS's account was placed into the hands of an attorney for collection after default, ETS agreed to pay 33% of the unpaid balance for attorney fees together with applicable costs. The open-account agreement containing the provision covered all of ETS's past, present, and future unpaid accounts receivable balances with Wyandotte. Thus, the terms of the open-account agreement clearly indicated that ETS and Wyandotte intended that the past-due-accounts provision would apply for the duration of their ongoing business relationship, and it was not improper for the trial court to include attorney fees in its judgment as part of the sum justly due. Accordingly, in this case, Wyandotte was entitled to the time-price differential and attorney fees it would have received under its contracts with ETS.

3. Under MCL 600.6013(7), if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument. In this case, the judgment was not rendered on a written instrument. Although the

contract between Wyandotte and ETS defined the scope of the damages that Wyandotte was entitled to seek under the PWBA, the underlying claim was not a contract claim. Wyandotte's cause of action did not arise directly out of its contract; it arose out of the PWBA. Therefore, even though the contract between ETS and Wyandotte determined the extent of Wyandotte's recovery, judgment was rendered on Wyandotte's statutory claim rather than on the contract itself. Interest on the judgment should have been calculated under MCL 600.6013(8), the general rule for interest on a money judgment in a civil case.

Court of Appeals judgment regarding sufficiency of the notice and the recovery of attorney fees and a time-price differential affirmed. Court of Appeals judgment regarding postjudgment interest reversed. Case remanded to the trial court for further proceedings.

Chief Justice YOUNG, concurring in part and dissenting in part, agreed with the majority that Wyandotte complied with the notice requirements of MCL 129.207 and that a time-price differential was recoverable under the statute, but would have held that the attorney fee award was not integrally related to the price of the materials Wyandotte furnished, so the attorney fee award was not recoverable as a sum justly due within the meaning of the PWBA. Chief Justice YOUNG also dissented from the majority's reasoning regarding the award of postjudgment interest. MCL 129.207 only makes compensable the unpaid costs of labor or materials furnished. Thus, the statute limits a claimant's recovery to the contractual terms that are related to the price of labor or materials furnished. While both the time-price-differential and the past-due-accounts provisions were in Wyandotte's agreement with ETS, only the former actually related to the cost of furnishing the materials. In addition, the PWBA limits the claimant's recovery based on when certain price terms are triggered; to be recoverable, the price term must be triggered before the expiration of 90 days after the last of the materials are supplied or labor furnished. The time-price-differential provision was triggered before Wyandotte gave its 90-day notice. Accordingly, Wyandotte could recover the time-price differential. In contrast, the attorney fee was not closely associated with the cost of materials furnished for the library project. The past-due-accounts provision created a penalty for collection efforts rather than determining Wyandotte's expectancy. Because this provision described a liquidated collection cost rather than a cost of the materials, the attorney fees set forth in the provision were not part of the sum justly due. In addition, the past-due-accounts provision was not triggered by the 90-day deadline given that Wyandotte did not file suit until well after the 90-day deadline had passed. The trial court, therefore, erred by awarding attorney fees. Finally, the majority mistakenly concluded that the judgment was rendered on the PWBA rather than on a written instrument. The agreement between Wyandotte and ETS was as much the basis for the trial court's judgment as the statute, so the judgment was rendered on a written instrument. Nonetheless, MCL 600.6013(7) did not apply because the underlying agreement did not evidence indebtedness. Therefore, the general interest rate set forth in MCL 600.6013(8) applied, but not for the reason stated by the majority.

Justice ZAHRA, concurring in part and dissenting in part, agreed that the notice provided by Wyandotte was sufficient and that MCL 600.6013(8) governed the calculation of postjudgment interest, but disagreed with the majority's reasoning regarding the calculation of interest and also did not agree that Wyandotte could claim attorney fees and a time-price differential under the payment bond. Simply because a remote subcontractor may sue on a

payment bond under MCL 129.207 does not suggest that its claim is determined by a contract to which the principal contractor who furnished the payment bond was not a party. Under Michigan law, a remote contractor's claim arises solely under the PWBA, which alone forms the basis to assess its claim. MCL 129.207 does not suggest that the principal contractor must wholly indemnify claimants under the PWBA. MCL 129.207 provides, in regard to remote subcontractors, that the claimant must provide notice within 90 days from the date on which the claimant performed the last of the labor, or furnished or supplied the last of the materials, for which the claim is made, stating with substantial accuracy the amount claimed. This notice identifies the labor and materials that the remote contractor has supplied. The sum justly due thus includes the labor and materials identified in the 90-day notice that the claimant has supplied but for which the claimant has not been paid. The majority departed from the statutory language by imposing liability for the amount provided for in the claimant's contract, regardless of whether the principal contractor and its surety agreed to that contract's terms. Further, the majority holds that judgment was rendered on Wyandotte's statutory claim rather than on the contract itself. This holding missed the entire point of the PWBA. MCL 129.207 expressly provides that a claimant may sue on the payment bond, but, in this case, neither the payment bond nor the contract between KEO and the library incorporated by the payment bond contained a specified interest rate. Accordingly, the majority reached the correct result when it concluded that interest on the judgment had to be calculated based on MCL 600.6013(8).

©2016 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.    Stephen J. Markman
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein
                        Joan L. Larsen

FILED May 3, 2016

S T A T E   O F   M I C H I G A N

SUPREME COURT

WYANDOTTE ELECTRIC SUPPLY
COMPANY,

       Plaintiff-Appellee,

v                                                    No. 149989

ELECTRICAL TECHNOLOGY SYSTEMS,
INC.,

       Defendant/Cross-Defendant,

and

KEO & ASSOCIATES, INC.,

       Defendant/Cross-Plaintiff-
       Appellant,

and

WESTFIELD INSURANCE COMPANY,

       Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

This case concerns several facets of the public works bond act (PWBA), MCL 129.201 *et seq.* First, it poses the question of whether actual notice is required for a sub-subcontractor to recover on a payment bond when that sub-subcontractor has complied with the notice requirements set forth in MCL 129.207. Second, the case raises the question of whether a PWBA claimant may recover a time-price differential and attorney fees that were provided for by the claimant's contract with a subcontractor, but were unknown to the principal contractor holding the payment bond as well as the principal's surety. Finally, we consider what postjudgment interest is appropriate under the PWBA. We hold that the PWBA contains no actual notice requirement for claimants that comply with the statute, that the trial court properly awarded a time-price differential and attorney fees on past-due invoices to plaintiff Wyandotte Electric Supply Company (Wyandotte), and that the trial court erred in awarding postjudgment interest under MCL 600.6013(7). Accordingly, we affirm the judgment of the Court of Appeals with regard to the first two issues and reverse with regard to the third. We remand this case to the trial court for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

In 2009 and 2010, the south wing of the Detroit Public Library was renovated. Defendant KEO & Associates, Inc. (KEO) was the principal contractor for this project. Defendant Westfield Insurance Company (Westfield) supplied KEO with a payment bond worth $1.3 million, as required by the PWBA. KEO was identified as the principal contractor and Westfield as the surety on the bond. KEO subcontracted with defendant Electrical Technology Systems, Inc. (ETS) to provide labor and materials for electrical

work. The agreement between KEO and ETS included a pay-if-paid clause, obliging KEO to pay ETS only after KEO had been paid for the relevant portion of work performed.

ETS in turn subcontracted with Wyandotte for materials and supplies, making Wyandotte a sub-subcontractor from KEO's perspective. ETS and Wyandotte first formed a relationship in 2003, when they entered into an "open account" agreement that governed ETS's purchases from Wyandotte. Under this agreement, ETS was to pay a "[t]ime price differential" of 1.5% per month (18% per annum) on invoices unpaid after 30 days.[1] For the Detroit Public Library project, ETS solicited a quote from Wyandotte. On August 13, 2009, Wyandotte submitted a quote that included the 1.5% time-price differential provision. On February 19, 2010, ETS accepted the quote by issuing a purchase order totaling $143,613.25. Wyandotte first delivered materials to ETS for the project on March 3, 2010. Over the course of the project, ETS paid Wyandotte only sporadically and the unpaid balance grew. Initially, Wyandotte supplied materials on credit and credited ETS's payments to the oldest outstanding balance, but eventually Wyandotte began to ship materials only for cash on delivery. The last shipment with an

---

[1] The term "time-price differential" refers to the difference between the current cash price of an item and the cost of purchasing the item with credit. A payment made with cash is immediate; a payment made with credit is not. Thus, when a payment is made with credit, the seller is burdened by a cash-flow interruption. A time-price differential compensates for the increased cost to a seller for credit. It reflects the difference between the credit price and the cash price. *Price Bros Co v Charles J Rogers Constr Co*, 104 Mich App 369, 377; 304 NW2d 584 (1981), citing *Silver v Int'l Paper Co*, 35 Mich App 469, 470; 192 NW2d 535 (1971). Despite the contract provision, Wyandotte's business practice was to wait 60 days to pursue the time-price differential.

unpaid balance was delivered on or about July 22, 2010; Wyandotte continued making deliveries on a cash basis until September 30, 2010.

On March 3, 2010, when it began work on the library project, Wyandotte sent letters to KEO and Westfield asking for a copy of the payment bond related to the library renovation project. The letter, on Wyandotte's letterhead, referred to the "Detroit Public Library South Wing with [ETS.]" According to Wyandotte, KEO provided a copy of the payment bond the next day. One week later, on March 10, 2010, Wyandotte sent KEO a 30-day "Notice of Furnishing" in accordance with MCL 129.207, explaining that it was one of ETS's suppliers. Wyandotte also sent copies of the letter to Westfield, the library, and ETS. As specified by MCL 129.207, Wyandotte sent these notices by certified mail. Additionally, Wyandotte sent the notices with return receipts requested. The notices to Westfield, ETS, and the library were all received. It is unclear what happened to the notice sent to KEO—United States Postal Service tracking indicated that it was at the Detroit Post Office on March 13, 2010, but it apparently never reached its destination. KEO states that it never received the 30-day notice. Again in accordance with the requirements of MCL 129.207, Wyandotte provided a 90-day notice of furnishing on November 1, 2010, to KEO, Westfield, ETS, and the library, stating that its last day of furnishing materials had been September 30, 2010.

Throughout the renovation project, KEO made progress payments to ETS totaling more than $248,000,[2] but ETS was not fully paying Wyandotte. KEO claims not to have

_____

[2] KEO claims to have paid more than it owed; ETS claims that KEO failed to pay what it owed to ETS. In any case, Wyandotte undisputedly did not receive full payment.

been aware of Wyandotte's involvement in the project before receiving the 90-day notice in November 2010.  After receiving the 90-day notice from Wyandotte, KEO requested information from ETS confirming payments in the form of a sworn statement.  According to KEO, ETS provided a falsified sworn statement averring that Wyandotte had been paid $80,000.  In January 2011, KEO terminated its subcontract with ETS, citing an abandonment of the project.

On January 28, 2011, Wyandotte filed a claim directly with Westfield to recover on the payment bond.  Westfield denied the claim, asserting a lack of liability.  Consequently, on March 14, 2011, Wyandotte filed suit against ETS, KEO, and Westfield.  KEO filed a cross-claim against ETS on March 29, 2011.  ETS had apparently gone out of business and its president had declared personal bankruptcy, so it failed to appear and was defaulted.  Wyandotte continued to pursue claims against KEO and Westfield on the basis of the surety bond.[3]

On September 7, 2011, Wyandotte moved for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a complaint.  The trial court heard oral argument on whether there was a valid bond claim when KEO had not received the 30-day notice of furnishing and whether Wyandotte could recover the 1.5% time-price differential and attorney fees on a bond claim.  On November 4, 2011, the trial court granted Wyandotte's motion in part, concluding that there was a valid bond claim because Wyandotte had complied with the notice requirements, and that Wyandotte could

---

[3] Because KEO and Westfield's financial interests with respect to this project are aligned, they have filed joint arguments in this appeal.  We refer to them jointly as "defendants" throughout this opinion.

recover the time-price differential as well as attorney fees. The only remaining issue was the amount of damages, and a bench trial was held on that narrow question. The trial court found that the unpaid balance owed to Wyandotte was $154,343.29, that Wyandotte was entitled to a total time-price differential of $76,403.44, and that Wyandotte was entitled to $30,000 in attorney fees.[4] Wyandotte moved for entry of judgment and further requested postjudgment interest under MCL 600.6013(7). The trial court granted the motion over defendants' objections and entered a judgment in the total amount of $272,927.70.[5] The Court of Appeals affirmed the judgment in an unpublished opinion.

## II. NOTICE UNDER THE PWBA

Defendants first contend that Wyandotte did not have a cause of action against them because KEO did not receive Wyandotte's 30-day notice. We review a trial court's summary disposition order de novo. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). Likewise, questions of statutory interpretation are subject to review de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013). When interpreting a statute, our foremost rule of construction is to discern and give effect to the Legislature's intent. *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015). Because the language chosen is the most reliable indicator of that intent, we enforce clear and

---

[4] The attorney fees award was agreed to by the parties and was less than the attorney fees provided for in the contract.

[5] The final award also included, under MCR 2.403(O), $12,180.97 for fees and costs arising out of defendants' rejection of a case evaluation.

6

unambiguous statutory language as written, giving effect to every word, phrase, and clause. *Id*. at 345-346.

Traditionally, public property cannot be the subject of a lien unless a statute specifically permits it. *Knapp v Swaney*, 56 Mich 345, 347; 23 NW 162 (1885). The Legislature enacted the PWBA to protect contractors and suppliers working on public projects who, unlike their private-works counterparts, have no recourse when other contractors default on their obligations. *Adamo Equip Rental Co v Mack Dev Co, Inc*, 122 Mich App 233, 236; 333 NW2d 40 (1982), citing *Ford v State Bd of Ed*, 166 Mich 658; 132 NW 467 (1911). While contractors and suppliers can place mechanics' liens on private projects, the PWBA protects those workers on public projects by requiring the principal contractor on a public project valued at $50,000 or more to obtain a payment bond. MCL 129.201. Payment bonds serve to protect subcontractors in privity with a principal contractor, as well as remote sub-subcontractors like Wyandotte, who are not fully compensated for their contributions to a public project. MCL 129.203. The principal contractor who obtains the bond, as well as the principal's surety if applicable, is liable to compensate suppliers of labor or materials. *Id*.

MCL 129.207 provides for recovery under a principal contractor's payment bond, but prescribes a two-step notice procedure for a remote party from the principal contractor's perspective, that is, one lacking a direct contractual relationship with the principal contractor:

> A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the

7

materials being furnished or to be furnished, or labor being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Each notice shall be served by mailing the same by certified mail, postage prepaid, in an envelope addressed to the principal contractor, the governmental unit involved, at any place at which said parties maintain a business or residence.

Defendants' argument is that there can be no liability under the PWBA because KEO never actually received the 30-day notice—i.e., there was a failure of service.[6] In essence, defendants ask us to read an actual notice requirement into MCL 129.207. We decline to do so. First, we consider the plain language of the statute. Because "served" in this context is a technical word with a specific meaning in the law, we refer to that technical meaning. MCL 8.3a. "Serve" means "[t]o make legal delivery of (a notice or process)" or "[t]o present (a person) with a notice or process as required by law[.]" *Black's Law Dictionary* (10th ed). Therefore, the word "served," as used in this statute, in itself does not implicate any substantive requirements; it merely compels compliance with the relevant law.

Furthermore, service of notice is mandatory under MCL 129.207, because the statute declares that a party "shall not have a right of action upon the payment bond unless" the two notices are provided and states that the two notices "shall inform" the

---

[6] Defendants do not argue in this Court that Wyandotte failed to serve the 90-day notice required by MCL 129.207.

8

specified parties of certain information. However, the Legislature did not specify that actual receipt of notice is a requirement of the PWBA, although it has done so in other statutes. Some statutes mandate that a party provide service by taking actions "reasonably calculated to give actual notice . . . ." See, e.g., MCL 125.2335(3); MCL 445.1539; MCL 487.3224(1). Others expand upon delivery directions, requiring that mailed notice be sent return-receipt demanded or that some additional step be taken to prove that notice was given. See, e.g., MCL 168.711 (requiring service by "registered or certified mail, with a return receipt demanded"); MCL 213.181 (requiring service by "registered mail, and a return receipt demanded"); MCL 500.2034 (requiring "the return postcard receipt for" a statement served under the statute as proof of service); MCL 290.725(3) ("The verified return of service shall be proof of the service . . . ."). The Legislature elected not to impose such a burden in MCL 129.207.

Defendants ask us to overlook the fact that Wyandotte sent its 30-day notice of furnishing via certified mail, return-receipt requested, and render a decision based on the fact that KEO did not receive that notice.[7] The rules of statutory construction demand that this Court " 'give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *People v*

---

[7] At oral argument, defendants additionally suggested that service with return-receipt requested was not in conformity with MCL 129.207. We do not find compelling defendants' contention that Wyandotte failed to comply with the statute when it took the additional precaution of sending its correspondence return-receipt requested. The plain language of MCL 129.207 does not require a return receipt, and we decline to read such language into the statute. But we also do not believe that a party that requests a return receipt when sending notice by certified mail is not entitled to a right of action on a payment bond under MCL 129.207.

9

*Cunningham*, 496 Mich 145, 154; 852 NW2d 118 (2014), quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). In addition to the portions of the statute requiring notice, MCL 129.207 specifies that "notice shall be served by mailing the same by certified mail, postage prepaid . . . ." To accept defendants' argument would render that phrase nugatory. In order to give effect to this phrase, we must conclude that service is accomplished when a complainant mails the required information to the proper destination by certified mail within the required time frame.

This Court previously considered the notice requirements of the PWBA in *Pi-Con, Inc v A J Anderson Constr Co*, 435 Mich 375; 458 NW2d 639 (1990). Defendants maintain that this Court held in *Pi-Con* that the PWBA contains an actual notice requirement. In *Pi-Con*, a supplier of materials and services to a subcontractor on a public works project sent its notice of furnishing to the principal contractor via ordinary first-class mail rather than, as required by statute, by certified mail. *Id*. at 378-380. The *Pi-Con* Court reviewed the United States Supreme Court's construction of the Miller Act, 40 USC 3131 *et seq*., the federal analog to the PWBA, in *Fleisher Engineering & Constr Co v United States ex rel Hallenbeck*, 311 US 15; 61 S Ct 81; 85 L Ed 12 (1940), in which the Supreme Court observed:

> We think that the purpose of this provision [notice by certified mail requirement] as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to

10

provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown. [*Id*. at 19.]

Guided by the analysis in *Fleisher*, the *Pi-Con* Court concluded that service by first-class mail does not preclude recovery under the PWBA as long as the plaintiff can prove the defendant's actual receipt of the notice by a preponderance of the evidence. *Pi-Con*, 435 Mich at 378.

Defendants refer to the following portion of *Pi-Con* to support their contention that the PWBA contains an actual notice requirement:

> First, a claimant must prove that the principal contractor actually received notice. Second, the notice must relate "the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identify[] the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials . . . ." Third, the notice sent must have been written. Fourth, the notice must have been received within the time limits prescribed by the statute. [*Id*. at 382 (citation omitted; alteration in original).]

But the factual underpinnings of *Pi-Con* are dissimilar to those in this case, and those dissimilarities affect our approach to the PWBA's notice requirements. *Pi-Con* and the other Michigan cases that have previously addressed the notice requirement of MCL 129.207 all involved parties who failed to employ the statutorily prescribed delivery method—certified mail. See, e.g., *Pi-Con*, 435 Mich at 380 (notice sent by ordinary first-class mail); *Thomas Indus, Inc v C & L Electric, Inc*, 216 Mich App 603, 605-608; 550 NW2d 558 (1996) (no notice mailed but all required information included on packing slips with shipments of materials). In this case, by contrast, the parties do not dispute that Wyandotte sent notice via certified mail, although KEO apparently did not

11

receive it. In this situation, Wyandotte complied with the statute, which contains no actual notice requirement.

We reaffirm the continuing application of *Pi-Con*'s rule in cases in which a would-be PWBA claimant fails to comply with the particular method of service specified in MCL 129.207. To deny a PWBA claim when a preponderance of the evidence demonstrates that notice was actually received would improperly "elevat[e] form over substance." *Pi-Con*, 435 Mich at 385. Similarly, it would be more than passing strange to penalize a claimant for complying with the notice provisions outlined in the statute, as Wyandotte has done here. We conclude that, when a claimant has complied with the notice procedures set forth by the Legislature in MCL 129.207, there is no actual notice requirement.

### III. RECOVERABILITY OF A TIME-PRICE DIFFERENTIAL AND ATTORNEY FEES[8]

In prevailing on its PWBA claim, Wyandotte was awarded a judgment in the trial court that included a time-price differential and attorney fees, which had been provided for in its contract with ETS. To the extent that this issue is one of statutory interpretation of the PWBA, we review it de novo. *Elba Twp*, 493 Mich at 278. To the extent that it involves interpreting the contract between Wyandotte and ETS, this is also a question

---

[8] We acknowledge that there may be an issue with regard to whether the "attorney fees" requested by Wyandotte are appropriately referred to as such. In this case, the term "attorney's fees" arises out of a "PAST DUE ACCOUNTS" provision in ETS's open-account agreement with Wyandotte and differs from a traditional attorney fees provision. For the sake of simplicity, we follow the language used in the contract, and by the parties and the Court of Appeals, in continuing to use the term "attorney fees."

12

subject to review de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself. *Id*. at 468.

The PWBA permits an unpaid supplier of materials or labor to "sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon." MCL 129.207. Wyandotte sought payment based on its prior contracts with ETS: the open-account agreement enacted in 2003, the bid Wyandotte made for the Detroit Public Library project in 2009, and the ensuing purchase orders. Wyandotte argued, and the lower courts agreed, that Wyandotte was entitled to the unpaid balance on the materials and supplies it had provided as well as further damages based on the following two provisions that appeared in the open-account agreement:

> TIME PRICE DIFFERENTIAL Time price differential charges of 1-1/2% per month (18% per annum) are calculated on all invoices that are not paid and past due 30 days or more. You will be issued a separate invoice detailing these (finance) charges.
>
> * * *
>
> PAST DUE ACCOUNTS Accounts that are past due will be taken off open account and placed on C.O.D. until their account is brought back into current status. In the event your account is placed in the hands of an attorney for collection after default, the customer agrees to pay 33% of the unpaid balance for attorney's fees together with applicable costs.

The time-price differential provision also appeared on the quote for the library project.

As an initial matter, defendants maintain that they cannot be liable for either type of fee because they were not in contractual privity with Wyandotte and never agreed to

13

pay these fees.  This privity argument is unpersuasive.  Contractual privity is plainly not a requirement for recovery under MCL 129.207, which specifically allows a "claimant not having a direct contractual relationship with the principal contractor" to seek recovery on the payment bond.  Defendants' privity argument would strip away the PWBA's protection of remote contractors.

The dispositive question here is rather the meaning of "sum justly due" in MCL 129.207.  The statute merely states that a complainant may sue "on the payment bond for the amount, or the balance thereof, unpaid" and that a final judgment may be rendered for the "sum justly due . . . ."  MCL 129.207.  Neither of these phrases explicitly informs us whether the Legislature intended to encompass additional contractual provisions, such as time-price differential fees or attorney fees, as part of the sum justly due.[9]

---

[9] We recognize Chief Justice YOUNG's argument in his partial dissent that MCL 129.207 limits a claimant to recovery of a sum "integrally related to the cost of labor or materials furnished for the project."  We find no statutory support for this conclusion.  Contrary to his reading of MCL 129.207, the language "[a] claimant who has furnished labor or material in the prosecution of the work provided for in such contract" merely serves to identify who may make a claim under the PWBA—a party who has furnished labor or materials.  It does not by its plain language place a limit on what such a claimant may seek to recover.

Moreover, we discern little reason for distinguishing between (1) the materials price itself; (2) the time-price differential provision, which is related to the materials price; and (3) the attorney fees provision, which also constitutes part of the contract bid.  Wyandotte's decision to actually price materials at a particular level in the contract bid was presumably a function of all the other contract provisions, including those pertaining to the time-price differential and attorney fees.  That is, Wyandotte presumably adjusted its materials price downward, at least to some degree, on the assumption that all contract provisions would be given effect, and it would likely have quoted a higher materials price in the bid if it did not have the reasonable assurance that it would be reimbursed at a certain rate for delinquent payments (time-price differential) or for litigation required to

14

The Court of Appeals considered the scope of the phrase "sum justly due" under

the PWBA in *Price Bros Co v Charles J Rogers Constr Co*, 104 Mich App 369; 304

NW2d 584 (1981). The plaintiff in *Price Bros* was retained by a contractor on a public

works project to provide sewer pipe for installation. The two contracts at issue related to

the sewer pipe project and contained the following clause:

> Payment shall be due 30 days after the date of the statement. A service charge of 1-1/2 percent per month on the unpaid balance will be due on all amounts unpaid for 30 days after the due date. A 5% cash discount is applicable if paid within 30 days of the date of statement providing no other indebtedness to Price Brothers Company is delinquent. [*Id*. at 376.]

The Court of Appeals considered whether the service charge constituted a separate

extension of credit or a "flexible price factor employed to reflect plaintiff's increased

costs when its bills are not paid promptly." *Id*. at 377. The *Price Bros* Court concluded

that the service charge fell into the latter category and was recoverable under the PWBA

as an "integral part of the cost of the transaction" and an "integral part of the contract

---

satisfy outstanding debt (attorney fees). Accordingly, the attorney fees provision is not detached from the materials price; rather, it and the materials price are interrelated, just as the time-price differential provision and the materials price are interrelated. Given that Wyandotte is entitled to recover the materials price and the time-price differential, we believe Wyandotte is entitled to recover attorney fees as well.

We also note that our conclusion is consistent with how several federal circuits have interpreted the Miller Act. See *United States ex rel Maddux Supply Co v St Paul Fire & Marine Ins*, 86 F3d 332, 336 (CA 4, 1996) ("The Miller Act does not, by its own terms, provide for attorney's fees or interest. Several circuits have held, however, that interest and attorney's fees are recoverable if they are part of the contract between the subcontractor and supplier.").

15

between [the parties]." *Id*. at 377, 379. However, the *Price Bros* Court did not provide any justification for the use of this standard or consider other approaches to understanding the term "sum justly due." We therefore do not find it clarifying in this case.

Wyandotte's position, and that adopted by the Court of Appeals, is that the sum justly due for PWBA purposes is the amount provided for in the claimant's contract, regardless of whether the principal contractor and its surety have agreed to that contract's terms. An alternative position is to use the value of the labor or materials. We conclude that the former approach is more consistent with the plain language of the PWBA, which refers to the "amount . . . unpaid" at the time of institution of the action and does not expressly state (or limit) what kinds of damages are recoverable. This phrase implies a previous expectation of payment of a certain sum. In the absence of any further direction from the Legislature regarding how the amount unpaid ought to be determined, the most logical recourse is to the claimant's underlying contract, which best illustrates the intent and expectations of the parties to the contract. The Legislature does not differentiate the amount unpaid from the sum justly due, and we understand that sum to be determined based on the trial court's fact-finding as to the amount unpaid.

Because we use the contract to determine the sum justly due, we must ascertain what actually constituted the contract in this case. There were multiple written instruments evidencing the agreement between Wyandotte and ETS: the open-account agreement dating back to 2003, the quote for the library project, and the purchase orders related to the project. In our recent opinion in *Beck v Park West Galleries, Inc*, 499 Mich ___; ___ NW2d ___ (2016), we acknowledged the general rule that separate agreements

16

are treated separately. However, when parties enter into multiple agreements relating to the same subject-matter, we must read those agreements together to determine the parties' intentions. *Culver v Castro*, 126 Mich App 824, 826; 338 NW2d 232 (1983), citing *Reber v Pearson*, 155 Mich 593; 119 NW 897 (1909). Although the initial open-account agreement does not relate specifically to the library project, all of these agreements are directed to the same end—Wyandotte's provision of materials to ETS. Further, by its terms, the open-account agreement covered all "past, present and future unpaid accounts receivable balances" between Wyandotte and ETS. Together, these agreements demonstrate that Wyandotte and ETS intended to enter into an ongoing business relationship and they define the scope of that relationship. We therefore conclude that these agreements should be considered together.

The open-account agreement includes provisions regarding both a time-price differential and attorney fees. The later quote for the library project reiterated the time-price differential provision but was silent regarding attorney fees. But because the quote did not contradict the attorney fee clause present in the initial agreement, we conclude that the documents are not inconsistent and the later quote and purchase orders did not supersede the initial agreement. See *Culver*, 126 Mich App at 828. Accordingly, both the open-account agreement and the subsequent agreements relating specifically to the library project apply here.

We do not believe that a PWBA claimant's recovery is limited to the terms of a contract or contracts relating to the provision of labor and materials for a specific public works project when additional contracts also govern the parties' relationship with regard to that project. To the extent that the PWBA refers to public works project contracts, it

refers to the primary contract between a principal contractor and a governmental unit. For example, MCL 129.201, which obliges a principal contractor to obtain a payment bond, only discusses this primary contract. Similarly, MCL 129.203 provides:

> The payment bond shall be in an amount fixed by the governmental unit but not less than 25% of *the contract* amount solely for the protection of claimants, as defined in [MCL 129.206], supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in *the contract.* [Emphasis added.]

See also MCL 129.202. As with MCL 129.201, the phrase "the contract" in MCL 129.203 must refer to the primary contract between a principal contractor and a governmental unit. MCL 129.203 directs the *principal contractor* to obtain a payment bond; in stating that the payment bond shall be in an amount not less than 25% of the contract amount, the statute clearly indicates that the term "the contract" refers to the primary contract, because the principal contractor does not obtain separate payment bonds for each lesser contract with a subcontractor. Therefore, the discussion in MCL 129.207 of "[a] claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which payment bond is furnished under the provisions of [MCL 129.203]" refers to that primary contract yet again. It does not limit a PWBA *claimant's* reasonably expected recovery when the claimant is a sub-subcontractor.

A sub-subcontractor is, by definition, not a party to the primary contract. Given that the PWBA does not require a sub-subcontractor to be in privity of contract with the principal contractor in order to obtain relief, we hold that the PWBA allows a sub-subcontractor to rely on the terms of the agreement or agreements that govern its

18

relationship with a subcontractor. There are, of course, scenarios in which a contract predating the specific public works project would properly be disregarded under the PWBA: namely, when the prior contract is limited in scope and has no bearing on either the public works project or any continuing contractual relationship between the involved parties. However, where, as here, the language of an earlier contract indicates that ETS and Wyandotte intended it to govern their ongoing business relationship, we consider it alongside the specific contracts relating to the public works project.

At the time Wyandotte commenced this action, ETS had already fallen behind on its payments to Wyandotte for the materials it had provided in connection with the library project. The time-price differential referred to in the contracts between Wyandotte and ETS was in play, reflecting the increased cost to Wyandotte as ETS's bills went underpaid or unpaid. Therefore, a time-price differential was part of the amount unpaid and due to Wyandotte when it instituted the instant action against defendants. The trial court properly included the time-price differential as part of the judgment in Wyandotte's favor.

Regarding attorney fees, defendants correctly argue that Michigan follows the American rule, which provides that attorney fees are not to be awarded unless specifically provided for by a statute, rule, or contractual provision. *Watkins v Manchester*, 220 Mich App 337, 342; 559 NW2d 81 (1996). Defendants rely heavily on the fact that the PWBA does not expressly provide for an award of attorney fees, but fail to note that the open-account agreement did in fact have an attorney fees provision.[10] And, as noted

---

[10] As noted earlier in this opinion, the open-account agreement states that "[i]n the event [ETS's] account is placed in the hands of an attorney for collection after default, [ETS]

19

previously, the agreement covered all of ETS's "past, present and future unpaid accounts receivable balances" with Wyandotte. Thus, the terms of the open-account agreement clearly indicate that ETS and Wyandotte intended that the attorney fee clause would apply for the duration of their ongoing business relationship. Therefore, it was not improper for the trial court to include attorney fees in its judgment as part of the sum justly due.[11]

We conclude that, because the underlying contract is the source by which we determine what relief a PWBA claimant may seek, Wyandotte is entitled to the time-price differential and attorney fees it would have received under its contracts with ETS.

## IV. INTEREST ON THE JUDGMENT

The trial court awarded, and the Court of Appeals affirmed, postjudgment interest to Wyandotte under MCL 600.6013(7), which provides:

---

agrees to pay 33% of the unpaid balance for attorney's fees together with applicable costs."

[11] Even though the parties have not raised this issue, in his partial dissent Chief Justice YOUNG contends that the attorney fees provision was not triggered before Wyandotte sent its 90-day notice to defendants and, therefore, Wyandotte cannot claim attorney fees. He argues that MCL 129.207 limits a claimant's potential recovery to the amount unpaid 90 days after supplying the last of the labor or materials in question. This argument fundamentally misunderstands the 90-day provision of MCL 129.207, which merely creates a notice requirement. It does not purport to preclude claimants from recovering damages that accrue after the 90-day notice is served. Chief Justice YOUNG's partial dissent implicitly recognizes this point by agreeing that the time-price differential is recoverable under the statute—including the amounts that accrued after Wyandotte sent its 90-day notice to KEO on November 1, 2010. This conclusion is made emphatically clear by the first sentence of MCL 129.207, which allows a claimant to seek "the amount, or the balance thereof, unpaid at the time of institution of the civil action," not the amount unpaid 90 days after the claimant ceased performance.

20

For a complaint filed on or after July 1, 2002, if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed. The rate under this subsection shall not exceed 13% per year compounded annually.

Defendants contend that this was not the proper section under which to calculate interest on the judgment. We review this question of statutory interpretation de novo and seek to effect the Legislature's intent, turning first to the plain language of the statute. See *Elba Twp*, 493 Mich at 278.

MCL 600.6013(7) applies when certain criteria are met: the judgment must be "rendered on" a written instrument, the instrument must evidence indebtedness, and there must be a specified interest rate. This issue may be resolved based upon the first criterion. "Render" means, in relevant part, "to cause to be or become" and "to hand down (a legal judgment)." *Merriam-Webster's Collegiate Dictionary* (11th ed). To the extent that "render" is a technical legal term, to render means "to deliver formally," when undertaken by a judge. *Black's Law Dictionary* (10th ed).[12] This restrictive term requires the written instrument to be the actual basis of the judgment for MCL 600.6013(7) to apply.

---

[12] Because both the lay and legal dictionary definitions of "render" are substantially similar, we need not determine whether it is a legal term of art or a common term. See *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008).

21

The judgment here was not rendered on a written instrument. Regardless of whether the documents evidencing the contract between Wyandotte and ETS can even be said to constitute *a* written agreement for purposes of interest on the judgment, the judgment in this case was not rendered on them. Although the contract between Wyandotte and ETS defined the scope of the damages that Wyandotte was entitled to seek under the PWBA, the underlying claim was not a contract claim.[13] Wyandotte's cause of action did not arise directly out of its contract; it arose out of the PWBA. Without the legislatively provided remedy of the PWBA, Wyandotte would not have had a claim against defendants. Therefore, even though the contract between ETS and Wyandotte determined the extent of Wyandotte's recovery, judgment was rendered on Wyandotte's *statutory* claim rather than on the contract itself. Because judgment was not rendered on a written instrument at all, we need not address whether the written instrument in this case evidenced indebtedness at a specified interest rate. Interest on the judgment should instead be calculated under MCL 600.6013(8), the general rule for interest on a money judgment in a civil case.

## V. CONCLUSION

We conclude that MCL 129.207 did not require actual receipt of notice by the principal, that a time-price differential and attorney fees were part of the sum justly due to Wyandotte under its contracts, and that interest on the judgment should have been

---

[13] By contrast, Wyandotte's action directly against ETS, which ended in a default judgment, was a breach of contract claim. A judgment in such a case could be said to be rendered on the contract.

22

calculated under MCL 600.6013(8) rather than MCL 600.6013(7). Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals and remand to the trial court for entry of a judgment consistent with these holdings.

Richard H. Bernstein
Stephen J. Markman
Bridget M. McCormack
David F. Viviano
Joan L. Larsen

STATE OF MICHIGAN

SUPREME COURT

WYANDOTTE ELECTRIC SUPPLY
COMPANY,

   Plaintiff-Appellee,

v              No. 149989

ELECTRICAL TECHNOLOGY SYSTEMS,
INC.,

   Defendant/Cross-Defendant,

and

KEO & ASSOCIATES, INC.,

   Defendant/Cross-Plaintiff-
   Appellant,

and

WESTFIELD INSURANCE COMPANY,

   Defendant-Appellant.

_____

YOUNG, C.J. (*concurring in part and dissenting in part*).

This case addresses the issue of whether a claimant under the public works bond

act (PWBA)[1] may recover a time-price differential and attorney fees that were permitted

by its contract with a subcontractor, but were unknown to both the principal contractor

---

[1] MCL 129.201 *et seq.*

and its surety. MCL 129.207 of the PWBA allows claimants to recover a sum justly due for labor and materials furnished on a public project. I concur in Parts I and II of the majority opinion. As to Part III, I agree with the majority opinion that the time-price differential is recoverable under the statute, but I would hold that the attorney fee award is not integrally related to the price of the materials Wyandotte Electric Supply Company (Wyandotte) furnished, so it is not recoverable as a sum justly due within the meaning of the PWBA. Accordingly, I dissent from Part III and would reverse that portion of the holding of the Court of Appeals that permitted plaintiff to recover attorney fees. Finally, while I agree with the ultimate conclusion, I also dissent from the majority's reasoning in Part IV regarding the award of postjudgment interest. Wyandotte argues under MCL 600.6013(7) that the interest rate specified in its contract with Electrical Technology Systems, Inc. (ETS) applies, while defendants argue that the general interest rate in MCL 600.6013(8) controls. I disagree with the majority's reasoning, but I nonetheless concur with the majority's conclusion that the general interest rate under MCL 600.6013(8) applies.

## I. FACTS AND PROCEDURAL HISTORY[2]

Defendant KEO & Associates, Inc. (KEO) was the principal contractor on a renovation project at the Detroit Public Library in 2009. As required under the PWBA, defendant Westfield Insurance Company (Westfield) supplied a payment bond and stood as surety on the bond.

---

[2] Though I concur in the majority's statement of the facts, I restate the most relevant facts here for the sake of clarity.

KEO subcontracted with defendant ETS to provide labor and materials for electrical work on the renovation project. ETS then subcontracted with plaintiff Wyandotte for materials and supplies, making Wyandotte a sub-subcontractor in relation to KEO. ETS and Wyandotte had been in an open-account agreement since 2003, and this contract also governed ETS's purchases from Wyandotte during the library renovation. The contract specified that ETS would pay Wyandotte a time-price differential of 1.5% per month (18% per annum) on invoices unpaid after 30 days. This provision represented an interest rate for purchases ETS made on credit. The contract also specified that ETS would pay 33% of any unpaid balance as an attorney fee if Wyandotte had to pursue collection litigation after a default.

Wyandotte submitted a quote to ETS that included the time-price differential provision. ETS accepted this quote by issuing a purchase order to Wyandotte on February 19, 2010. Wyandotte began delivering materials to ETS on March 3, 2010, and made its last delivery on September 30, 2010. Over the course of the project, ETS became increasingly behind in its payments to Wyandotte. Eventually, ETS stopped payment altogether and went out of business. Though KEO claims it paid ETS all that was owed, Wyandotte never received full payment from ETS. As required by the PWBA, Wyandotte sent notice to KEO and Westfield on November 1, 2010, claiming it was owed $150,762.33 for electrical materials furnished to ETS and the time-price differential. Wyandotte filed a claim with Westfield on January 28, 2011, to recover on the payment bond. Westfield denied the claim.

Wyandotte filed a PWBA suit against ETS, KEO, and Westfield on March 14, 2011, and moved for summary disposition. The trial court granted the motion in part,

3

holding that the bond claim was valid and that, under its contract with ETS, Wyandotte could recover both the time-price differential and attorney fees. A bench trial was held on the issue of damages. The trial court held that Wyandotte was owed a balance of $154,343.29, a time-price differential of $76,403.44, and attorney fees of $30,000. Wyandotte requested postjudgment interest under MCL 600.6013(7), which the trial court granted. The Court of Appeals affirmed this judgment in an unpublished opinion.

## II. ATTORNEY FEES

MCL 129.207 of the PWBA reads as follows:

> A claimant who has furnished *labor or material* in the prosecution of the work provided for in such contract in respect of which payment bond is furnished under the provisions of [MCL 129.203], and *who has not been paid in full therefor* before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, may sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the *sum justly due* him and have execution thereon.[3]

When contractors are not fully paid after providing labor or materials for a public project, this statute permits them to sue on the payment bond for the amount unpaid at the time the civil action is instituted. The extent of defendants' statutory liability is the "sum justly due."[4] As the majority opinion correctly states, the phrase "amount . . . unpaid"[5] implies a "previous expectation of payment of a certain sum." Because the statute gives

---

[3] Emphasis added.

[4] MCL 129.207.

[5] *Id.*

4

no further direction on how to calculate the sum justly due, we examine the underlying contract to determine the parties' expectations. In this case, the open-account agreement from 2003, Wyandotte's quote for the library project, and ETS's purchase orders for the project collectively constitute the basis for determining Wyandotte's contractual expectations.[6] I concur with the majority's analysis of the time-price differential and attorney fee issues up to this point and with the majority's conclusion that the trial court properly awarded Wyandotte the time-price differential.

I dissent from the majority opinion as to its further analysis of, and conclusion regarding, the attorney fee provision. The majority holds that, merely because the attorney fee provision was part of the open-account agreement with ETS, the trial court appropriately included the attorney fee in its judgment. This approach treats the PWBA as if it creates a statutory breach of contract claim. I respectfully disagree. The statute only makes compensable the unpaid costs of *labor or materials furnished*. Thus, the statute limits a claimant's recovery to the contractual terms that are related to the price of labor or materials furnished. While both the time-price differential and the attorney fee provision are listed in Wyandotte's agreement with ETS, only the former actually relates to the cost of *furnishing* the materials, so the trial court should not have awarded Wyandotte an attorney fee.

---

[6] Because each instrument was related to the same subject matter (i.e., Wyandotte's provision of materials to ETS), we read these instruments together, as required under *Culver v Castro*, 126 Mich App 824, 826; 338 NW2d 232 (1983), citing *Reber v Pearson*, 155 Mich 593; 119 NW 897 (1909). Furthermore, the PWBA allows sub-subcontractors, like Wyandotte, to rely on agreements that govern a continuing contractual relationship with a subcontractor, like ETS.

I would hold that MCL 129.207 requires us to consider whether a provision of an underlying contract used to determine the expectancy of the unpaid contractor is integrally related to the cost of labor or materials furnished for the project. MCL 129.207 allows a claimant to sue on the payment bond for the amount unpaid and recover the sum justly due him. The statute defines the amount unpaid in terms of the cost of *labor and materials* provided on the project, stating that "[a] claimant who has furnished labor or material . . . and who has not been paid in full therefor . . . may sue on the payment bond for the amount, or the balance thereof, unpaid . . . ."[7] In other words, the PWBA entitles a claimant to full payment for the labor or materials furnished; a claimant is not entitled to full damages that might otherwise be available for a breach of contract claim. Therefore, we should hold the principal contractor and surety liable for only those terms that are integrally related to the cost of labor or materials supplied, not for any and all collateral terms in the underlying contract. The majority erred by limiting its review simply to whether Wyandotte's claimed damages were allowed by the contract.

Furthermore, the PWBA limits the claimant's recovery based on when certain price terms are triggered. MCL 129.207 states:

> A claimant who has furnished labor or material in the prosecution of the work . . . and who has not been paid in full therefor *before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him **for which claim is made***, may sue on the payment bond for the amount, or the balance thereof, *unpaid at the time of institution of the civil action*, prosecute such action to final judgment for the sum justly due him and have execution thereon. A claimant not having a direct contractual

---

[7] MCL 129.207.

6

relationship with the principal contractor shall not have a right of action upon the payment bond unless . . . he has given *written notice* to the principal contractor and the governmental unit involved *within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material **for which the claim is made***, stating with substantial accuracy **the amount claimed** and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.[8]

MCL 129.207 repeatedly refers to a 90-day period after supplying the last of the labor or material for which the claim is made. Based on this language, Wyandotte's "claim is made" for labor or materials furnished for which Wyandotte "has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the . . . material was furnished or supplied . . . ."[9] In other words, we must examine the price terms in the contract that came due by that 90-day deadline but were not paid in full, for which the claimant may then proceed against the payment bond.

Under this interpretation, Wyandotte's claim is for the cost of materials furnished, limited to the price terms under the contract that came due by the 90-day deadline. Notably, the statute required Wyandotte to notify KEO and Westfield of its claim, "stating with substantial accuracy the amount claimed . . . ."[10] Wyandotte is then entitled to sue "for the amount, or the balance thereof, unpaid at the time of institution of the civil action . . . ."[11] When a claimant receives partial payment between its 90-day notice and

---

[8] *Id.* (emphasis added).

[9] *Id.*

[10] *Id.*

[11] *Id.*

7

the institution of its action under the PWBA, the amount unpaid will be less than the amount originally claimed in the notice. In the present case, Wyandotte was paid nothing between its 90-day notice and the time it filed its PWBA suit, so the amount unpaid is the entire amount owed, based on the price terms in its contract with ETS that triggered by the 90-day deadline.[12]

The majority claims that the plain language of the statute does not support this interpretation. However, the majority only cites a portion of the statute for this contention rather than reading the provision as a whole. The majority fails to analyze the full portion of MCL 129.207 quoted in this opinion, namely that "[a] claimant who has furnished labor or material . . . and who has not been paid in full therefor . . . may sue on the payment bond for the amount, or the balance thereof, unpaid . . . ." Thus, the statute plainly states that the claimant may only sue for the amount unpaid for labor and materials the claimant supplied, thereby limiting the claimant's recovery to the cost of labor and materials supplied. The majority opinion is internally inconsistent because, although the majority acknowledges that Wyandotte's claim against defendants is not a contract claim and does not arise directly out of the contract, the majority uses the entirety of the contract as a measure of Wyandotte's damages. Instead, the PWBA

---

[12] The majority misconstrues my argument, stating, "He argues that MCL 129.207 limits a claimant's potential recovery to the amount unpaid 90 days after supplying the last of the labor or materials in question." The 90-day deadline does not cap the amount of damages that a claimant may recover. Instead, the deadline merely determines which price terms have triggered and, therefore, which categories of damages may be included in the claimant's recovery. For example, when a time-price differential or similar provision is applicable, the amount unpaid may increase between the time the claimant gives its 90-day notice and the time the civil action is instituted, as in the present case.

8

instructs us to use the contract only to establish Wyandotte's expectancy regarding the cost of labor or materials Wyandotte furnished but was not paid for.[13]

The time-price differential is inextricably related to the cost of materials furnished for the library project and the provision triggered before Wyandotte gave its 90-day notice: it is a part of the price term of the agreement with ETS and the provision applied to invoices that went unpaid after 30 days. In Wyandotte's contract with ETS, the time-price differential provision states, "Time price differential charges of 1-1/2% per month (18% per annum) are calculated on all invoices that are not paid and past due 30 days or more." This provision created an interest rate for purchases ETS made on credit, which compensated Wyandotte for delayed payment. Wyandotte included this amount in the quote it submitted to ETS as a cost of materials. The Court of Appeals adequately explained in *Price Bros Co v Charles J Rogers Constr Co* why such a cost differential is closely related to the expectancy that is properly considered as the sum justly due under the PWBA:

> [T]he differential is an *integral part* of the cost of the transaction. If the buyer pays cash, the seller receives the money immediately and no burden is placed on him. If the buyer elects to purchase on credit, the seller is

---

[13] I am not persuaded by the majority's argument, citing *United States ex rel Maddux Supply Co v St Paul Fire & Marine Ins*, 86 F3d 332 (CA 4, 1996), that certain federal circuit courts have interpreted the Miller Act, 40 USC 3131 *et seq.*, to allow recovery of attorney's fees. In *Maddux Supply Co*, the Fourth Circuit specifically noted that allowing recovery of attorney's fees was consistent with its prior rulings "that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers." *Id*. at 336. The PWBA does not require a general contractor or its surety to pay the amount owed by a subcontractor to a sub-subcontractor. Instead, as I have explained, the PWBA explicitly limits recovery to the amount unpaid for labor or materials furnished. See MCL 129.207.

burdened by the interruption to its cash flow, and so the buyer may pay a "price" for the benefit of receiving the materials without paying for them immediately.[14]

Accordingly, the time-price differential is an integral part of the sum justly due for materials Wyandotte supplied on the renovation project because it establishes an interest rate that directly relates to the price of the materials Wyandotte furnished when ETS paid on credit.

In contrast, the attorney fee is not closely associated with the cost of materials furnished for the library project. The attorney fee provision in the contract states, "In the event your account is placed in the hands of an attorney for collection after default, the customer agrees to pay 33% of the unpaid balance for attorney's fees together with applicable costs." The language of this provision indicates that attorney fees are unrelated to the cost of materials because, unlike the time-price differential, they bear no relation to the cost of supplying labor or materials. The attorney fee provision creates a penalty for collection efforts rather than determining Wyandotte's expectancy—i.e., the price ETS owed for materials Wyandotte supplied. Indeed, it does not appear to be an attorney fee provision at all, because it does not define itself in terms of actual or reasonable attorney fees. It is, in fact, a liquidated damages clause that plaintiff could invoke if it placed an overdue debt into the hands of a collecting attorney.[15] Because this

---

[14] *Price Bros Co v Charles J Rogers Constr Co*, 104 Mich App 369, 377; 304 NW2d 584 (1981) (emphasis added).

[15] See *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 508; 579 NW 2d 411 (1998) ("A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach."). In this agreement, if ETS breaches by defaulting on its payments and Wyandotte must litigate to recover the

provision describes a liquidated collection cost rather than a cost of the labor or materials themselves, it is not part of the sum justly due.

Furthermore, the attorney fee provision did not trigger by the 90-day deadline. In its 90-day notice to KEO and Westfield, dated November 1, 2010, Wyandotte claimed that the amount owed included the cost of materials furnished to ETS and the time-price differential. Wyandotte did not claim that it was owed an attorney fee because the provision had not yet triggered—Wyandotte did not sue ETS, KEO, and Westfield until March 14, 2011, which was well after the 90-day period that began to run on September 30, 2010. Thus, Wyandotte's "amount claimed"[16] does not include an attorney fee because not only is the attorney fee provision not a price term related to the cost of

---

amount owed, the attorney fee provision fixes Wyandotte's damages: Wyandotte may recover the unpaid balance plus an additional 33% of that unpaid balance. In regard to attorney fee provisions and liquidated damages clauses, *Williston on Contracts* states:

> It is a common provision in promissory notes, and an occasional stipulation in other kinds of contracts, especially mortgages, that in case of breach, the promisor will pay an attorney's fee, the percentage or amount of which is sometimes stated, for enforcing the obligation. There seems no occasion to distinguish between mortgages and other contracts with reference to such a provision, *which is clearly in the nature of a liquidated damages provision*.

> \* \* \*

> The contract sometimes makes no provision concerning the amount of the stipulated fee; sometimes it fixes a sum, either by *stating a percentage of the principal debt* or by stating a lump sum. [24 Williston, Contracts (4th ed), § 65:23, pp 319-324 (emphasis added; citations omitted).]

[16] MCL 129.207.

11

materials Wyandotte furnished, as already explained in this opinion, but the provision also did not trigger by the 90-day deadline.

Therefore, while I agree with the majority that the time-price differential was properly included in Wyandotte's award, I would hold that Wyandotte is not entitled to the attorney fee award because it is not directly related to the cost of materials it supplied. The attorney fee provision also triggered after the 90-day deadline created by the statute.

### III. POSTJUDGMENT INTEREST

There are two relevant statutes on postjudgment interest in this case. Defendants argue that postjudgment interest should have been calculated under the default formula given in MCL 600.6013(8).[17] Instead, the trial court awarded Wyandotte postjudgment interest under MCL 600.6013(7), which states:

> For a complaint filed on or after July 1, 2002, *if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate*, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed.

---

[17] MCL 600.6013(8) states:

> Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.

The rate under this subsection shall not exceed 13% per year compounded annually.[18]

MCL 600.6013(7) only applies when the judgment is rendered on a *written* instrument. According to the majority, this means MCL 600.6013(7) only applies if the written instrument is the actual basis of the judgment. However, I believe that the majority mistakenly concludes that the judgment was rendered on the PWBA rather than on a written instrument. As noted in the majority opinion and earlier in this opinion, although the PWBA creates Wyandotte's cause of action, the trial court must examine the underlying agreement between Wyandotte and ETS to determine what sum is justly due. The agreement here is as much the basis for the trial court's judgment as the statute itself, so the judgment is rendered on a written instrument. Therefore, I believe it is most accurate to say the trial court's judgment is rendered *pursuant to* the statute, but it is *rendered on* the underlying contract.

But there is an even more compelling reason to reject MCL 600.6013(7) as the basis for determining postjudgment interest. MCL 600.6013(7) does not apply because the underlying contract does not evidence indebtedness. MCL 600.6013(7) only applies "if a judgment is rendered on a written instrument *evidencing indebtedness* with a specified interest rate . . . ."[19] In this case, the agreement between Wyandotte and ETS did not evidence indebtedness for the simple reason that ETS did not owe plaintiff anything on the construction project at the time they entered into the agreement. Rather,

---

[18] Emphasis added.

[19] Emphasis added.

the agreement merely provided structure for calculating a potential *future* debt. The plain language of MCL 600.6013(7) requires that the written instrument provide evidence of an *existing* debt, not evidence of a *potential* debt. "Evidence of indebtedness" is a term of art.[20] Indeed, when our statutes use the phrase "evidence of indebtedness," they do so in contemplation of debt-bearing contracts or notes.[21] I therefore concur with the majority that the general interest rate under MCL 600.6013(8) applies, but I do so because the underlying contract does not provide evidence of indebtedness as required by MCL 600.6013(7).

## IV. CONCLUSION

I do not believe Wyandotte is entitled to attorney fees. The so-called attorney fees specified in Wyandotte's agreement with ETS are not related to the price of the materials

---

[20] See MCL 8.3a ("[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

[21] See Const 1963, art 9, § 31 ("The limitations of this section shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness . . . ."); MCL 12.272(d) (" 'Bond' means a bond, note, financial instrument, or other evidence of indebtedness or obligation issued by the authority under this act."); MCL 41.284 ("In lieu of borrowing money and issuing bonds or other evidence of indebtedness . . . ."); MCL 120.15 ("[T]he commission is authorized and empowered to issue notes, bonds or other evidences of indebtedness which shall be a lien upon the property to be acquired . . . ."); MCL 207.634 ("Bonds, obligations, or other evidences of indebtedness of the local governmental unit . . . ."); MCL 324.50102(3) (" 'Bond' means a bond, note, or any other instrument issued to evidence indebtedness."); MCL 388.981b(1) ("The state administrative board may authorize and approve an interest rate exchange or swap, hedge, or similar agreement or agreements in connection with the issuance of bonds, notes, or commercial paper issued under this act or in connection with outstanding bonds, notes, or commercial paper, or other obligations or evidence of indebtedness of this state under this act.").

14

Wyandotte furnished nor did the provision trigger by the statute's 90-day deadline. Therefore, I would hold that attorney fees are not recoverable as a sum justly due and reverse the Court of Appeals on this issue. Furthermore, I do not agree with the majority's reasoning regarding the award of postjudgment interest. Nevertheless, I concur with the majority's conclusion that postjudgment interest should have been calculated under MCL 600.6013(8) rather than MCL 600.6013(7).

Robert P. Young, Jr.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

WYANDOTTE ELECTRIC SUPPLY
COMPANY,

       Plaintiff-Appellee,

v                                                                                     No. 149989

ELECTRICAL TECHNOLOGY SYSTEMS,
INC.,

       Defendant/Cross-Defendant,

and

KEO & ASSOCIATES, INC.,

       Defendant/Cross-Plaintiff-
       Appellant,

and

WESTFIELD INSURANCE COMPANY,

       Defendant-Appellant.

_____

ZAHRA, J. (*concurring in part and dissenting in part*).

This case primarily addresses a single statute, MCL 129.207, under the public works bond act (PWBA).[1] I agree with my colleagues that this statute does not require a claimant to provide actual notice of his or her claim to the principal contractor. A claimant need only provide notice "by mailing the same by certified mail, postage

---

[1] MCL 129.201 *et seq.*

prepaid, in an envelope addressed to the principal contractor . . . ."[2] Wyandotte Electric Supply Company satisfied the statutory requirements of notice in this case. I therefore agree with Part II of the majority opinion. I write separately because I disagree with majority's conclusion that Wyandotte may claim attorney fees and a time-price differential under the payment bond. And while I agree that MCL 600.6013(8) should govern the calculation of postjudgment interest in this case, I disagree with my colleagues' reasoning for rejecting use of MCL 600.6013(7).

## I. ATTORNEY FEES AND THE TIME-PRICE DIFFERENTIAL

My disagreement with the majority arises under the first sentence of MCL 129.207, which states:

> A claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which payment bond is furnished under the provisions of section 3, and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, may sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon.[3]

The majority views the "sum justly due" under this statute as "the amount provided for in the claimant's contract, regardless of whether the principal contractor and

_____

[2] MCL 129.207.

[3] Under, MCL 129.206, the term "claimant" means "a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract." For purposes of this opinion, a claimant who lacks a direct contractual relationship with the principal contractor, such as plaintiff Wyandotte, is referred to as a "remote subcontractor" while a claimant who has a direct contractual relationship with the principal contractor is referred to as a "subcontractor."

2

its surety have agreed to that contract's terms."[4] The majority adopts this view not based on the language of the statute, but rather the "the absence of any further direction from the Legislature regarding how the amount unpaid ought to be determined . . . ."[5] The majority then compensates for this supposed Legislative shortcoming by imposing its own view that "the most logical recourse is to the claimant's underlying contract, which best illustrates the intent and expectations of the parties to the contract."[6]

The majority's analysis rests on a false premise. The principal contractor, KEO & Associates, Inc., was not a *party* to the claimant's underlying contract. The contract between subcontractor Electrical Technology Systems, Inc. (ETS) and remote subcontractor Wyandotte can only illustrate the intent and expectations of ETS and Wyandotte. Indeed, KEO did not contractually agree to pay any of its subcontractors, including ETS, a time-price differential or attorney fees, and there is no basis from which to conclude that KEO would have agreed to pay a time-price differential or attorney fees to a party with whom it had no contractual relationship.

There is no dispute among my colleagues that MCL 129.207 provides a remote subcontractor with a right of action on the payment bond even though it lacks a direct contractual relationship with the principal contractor. However, simply because a remote subcontractor may sue on the payment bond under MCL 129.207 does not suggest that its claim is determined by a contract to which the principal contractor who furnished the

---

[4] *Ante* at 16.

[5] *Ante* at 16.

[6] *Ante* at 16.

payment bond was not a party. The only contract mentioned by the Legislature in MCL 129.207 is the "contract in respect of which payment bond is furnished," which necessarily cannot include a remote subcontractor. Under Michigan law, a remote contractor's claim arises solely under the PWBA, which alone forms the basis to assess its claim.

Further, MCL 129.207 does not suggest that the principal contractor must wholly indemnify claimants under the PWBA. Rather, MCL 129.207 refers to the extent of a principal contractor's liability under the payment bond by identifying the claimant's "labor or material in the prosecution of the work," for which the claimant "has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made . . . ." This provision identifies the labor and materials that form the basis of the "amount, or the balance thereof, unpaid at the time of institution of the civil action" that the claimant may bring such action for "the sum justly due him . . . ." While a subcontractor has an actual contract with the principal contractor to determine the labor and materials it may seek to recoup under the payment bond, a remote contractor does not have a direct contractual relationship with the principal contractor. For this reason, MCL 129.207 provides, in regard to remote subcontractors, that the claimant must provide notice "within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." This notice, as in this case, identifies the labor and materials

4

that the remote contractor has supplied.  The "sum justly due" thus includes the labor and materials previously identified in the 90-day notice that the claimant has supplied but for which the claimant has not been paid.  The only other statutory basis to impose liability on the payment bond is MCL 129.206, which provides that " '[l]abor and material' includes that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract."  That the Legislature expressly provided for recovery of these incidental expenses, and these incidental expenses alone, strongly suggests that incidental expenses not expressly identified are not recoverable as "labor and material."[7]

To the extent that attorney fees and a time-price differential may even be considered incidental damages, as opposed to remote damages, they are simply not recoverable.  Further, and perhaps more telling, is that even expenses expressly identified cannot be recovered unless they are "directly applicable to the contract."[8]  Again, the only contract mentioned in MCL 129.207 is the "contract in respect of which payment bond is furnished . . . ."  No real argument can be made that attorney fees are directly related to the contract in respect of which payment bond is furnished.[9]  And while a

---

[7] Under the doctrine of *expressio unius est exclusio alterius*, the express mention in a statute of one thing implies the exclusion of other similar things.  *In re MCI Telecom Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999).  As applied to statutory interpretation, the doctrine reflects, "among other things, a legislative intent not to create liability outside the extent to which the legislature has acted."  22 Mich Civ Jurisprudence, Statutes, § 194.

[8] MCL 129.206.

[9] On this point, I am in agreement with Chief Justice YOUNG's partial concurrence and dissent.  As he states, *ante* at 10-11:

5

colorable argument can be made that a time-price differential is directly applicable to the contract, a time-price differential is not identified by the Legislature as "[l]abor and material" costs that may be recovered.[10]

Further, MCL 129.203 provides:

> The payment bond shall be in an amount fixed by the governmental unit but not less than 25% of the contract amount solely for the protection of claimants, as defined in [MCL 129.206], supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract.

The principal contractor's liability to remote contractors under the PWBA is solely based on the payment bond. The amount of the payment bond is fixed by the governmental unit at no less than 25% of the contract. If a claimant successfully sues on the payment bond and exhausts the payment bond, which may represent as little as 25% of the contract, a remote contractor that later sues no longer has no legal recourse to recover against the bond furnished by the principal contractor. Remote subcontractors

---

> The language of [the attorney fee provision] indicates that attorney fees are unrelated to the cost of materials because, unlike the time-price differential, they bear no relation to the cost of supplying labor or materials. The attorney fee provision creates a penalty for collection efforts rather than determining Wyandotte's expectancy—i.e., the price ETS owed for materials Wyandotte supplied. Indeed, it does not appear to be an attorney fee provision at all, because it does not define itself in terms of actual or reasonable attorney fees. It is, in fact, a liquidated damages clause that plaintiff could invoke if it placed an overdue debt into the hands of a collecting attorney. Because this provision describes a liquidated collection cost rather than a cost of the labor or materials themselves, it is not part of the sum justly due.

[10] See MCL 129.206.

6

only have a right to sue the principal contractor on the bond because the PWBA permits a suit despite the absence of a direct contractual relationship. Significantly, any awards received under the PWBA cannot cumulatively exceed the amount of the payment bond.

This limitation of the principal contractor's liability to remote subcontractors is precisely the reason that the PWBA does not provide for remote subcontractors to seek to enforce any and all collateral terms in the underlying contract. If a single claimant or several claimants exhaust the payment bond through an award of a time-price differential and attorney fees, another remote contractor may not be able to recoup the actual labor and materials it supplied for the public project. By green-lighting the recovery of remote damages found in the underlying contracts between subcontractors and remote subcontractors, the majority arbitrarily countenances the shortchanging of other remote contractors. In my view, this effectively thwarts the Legislature's intent that the payment bond be used "solely for the protection of claimants . . . ." MCL 129.203. The majority has clearly departed from the statutory language by imposing liability for the amount provided for in the claimant's contract, regardless of whether the principal contractor and its surety have agreed to that contract's terms.

## II. POSTJUDGMENT INTEREST

The trial court awarded Wyandotte postjudgment interest under MCL 600.6013(7)[11] at the time-price differential rate specified in the contract between

---

[11] MCL 600.6013(7) provides:

> For a complaint filed on or after July 1, 2002, *if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate*, interest is calculated from the date of filing the complaint to

7

Wyandotte and ETS. Because I disagree that Wyandotte is entitled to a time-price differential under the PWBA, I would reverse the trial court's award of postjudgment interest on that basis alone. The majority concluded MCL 600.6013(7) does not apply here because the judgment was not rendered on a written instrument. Accordingly, the majority concluded that postjudgment interest must be calculated under the general statute for determining interest on a money judgment in a civil case, MCL 600.6013(8). I agree with the majority that MCL 600.6013(8) should govern the calculation of postjudgment interest, but I disagree with the majority that "[t]he judgment here was not rendered on a written instrument."[12]

The majority holds that judgment was rendered on Wyandotte's statutory claim rather than on the contract itself. This holding misses the entire point of the PWBA. MCL 129.207 expressly provides that a claimant "may sue *on the payment bond* . . . ."[13]

The payment bond provides that KEO and Westfield Insurance Company

are held and firmly bound unto Detroit Public Library . . . as Obligee . . . for the use and benefit of claimants . . . in the amount of . . . $1,302,040.00 . . . for the payment whereof [KEO] and [Westfield] bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

---

the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed. The rate under this subsection shall not exceed 13% per year compounded annually. [Emphasis added.]

[12] *Ante* at 22.

[13] Emphasis added.

8

The payment bond expressly incorporates the contract between KEO and the library, and then provides:

> THE CONDITION OF THIS OBLIGATION is such that if [KEO] shall promptly make payment to all claimant, as defined in [the PWBA], who have complied with all the provisions of the [PWBA], for labor and materials used in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect.

The payment bond is clearly an "instrument" in that it is a "written legal document that defines rights, duties, entitlements, or liabilities . . . ."[14] But regardless of whether a payment bond that secures future payment may be considered a written instrument "evidencing indebtedness," neither the payment bond nor the contract incorporated by the payment bond contain "a specified interest rate."[15] Therefore, while I disagree with my colleagues' reasoning on this issue,[16] I nonetheless agree with the result reached that interest on the judgment should be calculated based on MCL 600.6013(8).

## III. CONCLUSION

I agree with the majority that a claimant need not provide actual notice to the principal contractor under the PWBA. I disagree with the majority however that the PWBA entitles a claimant to the amount provided for in the claimant's contract, regardless of whether the principal contractor and its surety have agreed to that contract's

---

[14] *Black's Law Dictionary* (10th ed).

[15] MCL 600.6013(7).

[16] I also disagree with Chief Justice YOUNG that the agreement between Wyandotte and ETS was as much the basis for the trial court's judgment as the statute itself.

9

terms. Rather, a claimant's recovery is limited to labor and materials under the PWBA, and does not include incidental expenses not provided for by the PWBA, such as time-price differentials and attorney fees. Finally, I agree with the majority's conclusion that interest on the judgment should be calculated based on MCL 600.6013(8). Under the PWBA, judgment is rendered on the payment bond, which is a written instrument evidencing indebtedness. But because this bond contained no specified interest rate, MCL 600.6013(7) does not apply.

Brian K. Zahra